[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 332.]

BOND ET AL., APPELLANTS, *v*. HOWARD CORPORATION ET AL., APPELLEES.

[Cite as *Bond v. Howard Corp*., 1995-Ohio-81.]

*Torts—Inherently dangerous work—Establishing liability to injured employee of independent subcontractor—General contractor "actively participated," when.*

———————————

For purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project. (*Cafferkey v. Turner Constr. Co.* [1986], 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, construed and applied.)

———————————

(No. 93-2569—Submitted April 4, 1995—Decided June 28, 1995.)

APPEAL from the Court of Appeals for Lorain County, No. 93CA005576.

———————————

{¶ 1} In 1990, appellee Howard Corporation ("Howard") entered into a contract with General Cinema Corporation ("General Cinema") to construct an eight-screen movie theater in Elyria, Ohio. Howard was hired as the general contractor for the project. To assist with the construction of the project, Howard contracted with appellee Valentine Construction, Inc. ("Valentine"), an independent subcontractor. Valentine was hired by Howard to complete masonry work for the construction project. Appellant William G. Bond was an employee of Valentine.

**{¶ 2}** In September 1990, Bond, while working at the construction site, fell through an unguarded opening located on the second floor of the project. On the day of the accident, Bond was constructing a wall. The wall was adjacent to the opening where Bond fell. The opening was for a stairwell, but the stairs had not yet been installed. Materials for the construction of the wall had been placed by another Valentine employee near the unguarded opening. Bond went to the area where the material was located to obtain block for the wall. Bond had his back to the opening and, after picking up a block, he stepped backwards and fell through the opening. Bond was severely injured as a result of the fall.

**{¶ 3}** Bond was aware that the opening existed and that it was unguarded. Howard did not supervise or participate in the actual construction of the wall.

**{¶ 4}** Following the accident, Howard closed off the opening with a guardrail. Occupational Safety and Health Administration ("OSHA") regulations and certain Ohio guidelines require that floor openings, such as the opening in question, be guarded.

**{¶ 5}** Bond and his wife, also an appellant herein, commenced suit in the Court of Common Pleas of Lorain County against Howard and Valentine. In their complaint, appellants alleged that Howard was "negligent in the performance of its duties and responsibilities as general contractor, and in providing William Bond with a safe place in which to work." Appellants also brought an intentional tort claim against Valentine.

**{¶ 6}** Howard and Valentine filed separate motions for summary judgment. Howard contended that it did not owe a duty of care to Valentine employees. Valentine, in its motion for summary judgment, asserted that appellants failed to establish the elements of "intent" for the purpose of proving the existence of an intentional tort.

**{¶ 7}** The trial court granted Howard's and Valentine's motions for summary judgment. On appeal, the court of appeals affirmed the judgment of the trial court.

**{¶ 8}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

————————————

*Jeffries, Kube, Forrest & Monteleone Co., L.P.A., Michael R. Kube* and *William J. Shramek*, for appellants.

*Reminger & Reminger Co., L.P.A.*, and *Nicholas D. Satullo*, for appellee Howard Corporation.

*Harry A. Tipping Co., L.P.A., Harry A. Tipping* and *John W. Clark*, for appellee Valentine Construction Company.

————————————

**DOUGLAS, J.**

**{¶ 9}** This appeal presents two issues for our consideration. The first issue is whether the general contractor Howard owed a duty of care to Bond, an employee of the subcontractor Valentine. The second issue is whether an intentional tort was committed by Valentine against Bond.

I

Bond v. Howard

**{¶ 10}** Appellants contend that the court of appeals erred in holding that the trial court properly granted summary judgment in favor of Howard. Appellants assert that ample evidence exists to find that Howard retained sufficient control over the construction site and that the general contractor "actually participated" in the subcontractor's work. In this regard, appellants claim that Howard owed a duty of care to Valentine employees.

**{¶ 11}** In support of its position that summary judgment was improperly granted in favor of Howard, appellants rely on portions of the contract between

General Cinema and Howard, and portions of the contract between Howard and Valentine. Specifically, appellants assert that the contract between Howard and General Cinema required Howard to comply with and enforce any applicable safety laws, rules or regulations. Appellants further urge that pursuant to the contract between Howard and its subcontractors the subcontractors were required to obtain permission and special instructions from Howard prior to beginning work in any area on the job site, and that Howard had a right to remove any equipment and personnel that created an unsafe condition at the site. Appellants also point to certain actions undertaken by Howard. Appellants contend that Howard made daily inspections of the construction site and, on one occasion, had given "directives" to Bond. Additionally, appellants emphasize that, on another occasion, the superintendent required Valentine to repair a scaffolding that had been improperly erected by Valentine. Appellants claim further that Howard acknowledged that it was responsible for providing "perimeter guarding and floor opening fall protection and its superintendent was in the process of obtaining approval to expend funds for such when Bond fell."

{¶ 12} In construing the evidence most strongly in favor of appellants, we must determine if the evidence supports a finding that Howard owed a duty of care to Bond to protect Bond from the injuries he sustained when he fell from the second floor of the construction project. In determining whether such a duty exists, we believe it is instructive to set forth and examine prior relevant decisions from this court where we have discussed the duties and responsibilities when one engages an independent contractor to perform an inherently dangerous task.

{¶ 13} In *Wellman v. E. Ohio Gas Co*. (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus, this court held that "[w]here an independent contractor undertakes to do work for another *in the very doing of which there are elements of * * * danger * * *,* no liability * * * *ordinarily* attaches to the one who engaged the services of the independent contractor." (Emphasis added.)

4

{¶ 14} The plaintiff in *Wellman* had been employed as a welder's helper by an independent contractor. The independent contractor had been hired by the defendant gas company to lay a gas line. The gas company had inspectors at the job site to ensure that the work was completed to its specifications. An employee of the independent contractor improperly removed a cap from the gas pipe. As a result, the cap struck plaintiff, fracturing one of his legs. In assessing whether the defendant owed a duty to the plaintiff, this court emphasized that the independent contractor was aware of the danger involved and, therefore, "it was [the independent contractor's] duty to warn and protect the plaintiff, and no such duty devolved on defendant." *Id.* at 107, 51 O.O. at 29, 113 N.E.2d at 632.

{¶ 15} In *Hirschbach v. Cincinnati Gas & Elec. Co*. (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, syllabus, we carved out an exception to the general rule set forth in *Wellman* and held that "[o]ne who engages the services of an independent contractor, *and who actually participates in the job operation performed by such contractor* and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." (Emphasis added.)

{¶ 16} In *Hirschbach,* Cincinnati Gas & Electric Company ("CG & E") hired an independent contractor to replace electrical wire conductors. Hirschbach, an employee of the independent contractor, was killed when the tower arm collapsed. The collapse was caused by the tractor winch, which was positioned too close to the tower. Prior to the fatal fall, Hirschbach and several fellow employees sought permission from CG & E's inspector to position the winch tractor at a safe distance from the base of the tower. The inspector denied their request. Based on these facts, we reversed a summary judgment entered in favor of CG & E and concluded that:

"* * * [A] jury could reasonably conclude that CG & E had sole control over the safety features necessary to eliminate the hazard. By denying the

[independent contractor's] crew its request to reposition the winch tractor: (1) CG & E refused to eliminate the hazard, (2) *CG & E interfered with the mode of the job operation*, and (3) *CG & E actually participated in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed*." (Emphasis added and footnote omitted.) *Id*. at 208, 6 OBR at 261, 452 N.E.2d at 329.

{¶ 17} As can be gleaned, the distinguishing factor between *Wellman and Hirschbach* is that in *Hirschbach,* the general contractor, who had engaged the independent contractor, actually participated in the specific job operation. In comparison, the party who hired the independent contractor in *Wellman* had inspectors at the job site, but only to ensure that the job was completed according to specifications.

{¶ 18} In *Cafferkey v. Turner Constr. Co*. (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, we further refined our holdings in *Wellman* and *Hirschbach*. Therein, we held that "[a] general contractor *who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity*, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." (Emphasis added.) *Id*. at syllabus.

{¶ 19} In *Cafferkey*, the general contractor contracted with an independent subcontractor to drill and install caisson foundations. In one of the caisson holes, the subcontractor detected methane gas and made certain efforts to dispel the gas. Nevertheless, the subcontractor allowed two of its employees to enter the hole to burn off, with a cutting torch, a portion of a twisted metal casing. While in the hole, one of the employees struck his flint to light a torch. As a result, an explosion occurred and both employees were severely injured and they later died from their injuries. By contract, and by virtue of certain portions of the general contractor's safety manual, the general contractor retained control over safety procedures at the

6

project. The general contractor, however, was not informed of the subcontractor's decision to allow its employees to go into the hole.

{¶ 20} We compared the factual setting in *Hirschbach* with the situation in *Cafferkey* and concluded that, as a matter of law, the general contractor in *Cafferkey* owed no duty of care to the decedents. The general contractor in *Cafferkey "did not actively participate in any action or decision that led to the fatal injuries.* [The general contractor] may have known about some of [the subcontractor's] activities, but that knowledge does not constitute 'actual participation' in those activities within the *Hirschbach* rule. Unlike the landowner in *Hirschbach*, [the general contractor] *neither gave nor denied permission for the critical acts that led to the decedent's injuries."* (Emphasis added.) Id. at 112, 21 OBR at 418, 488 N.E.2d at 192.

{¶ 21} With the foregoing case law as a guide, the trial court, in the case at bar, in construing the evidence most strongly in favor of appellants held that Howard was entitled to summary judgment. In affirming the judgment of the trial court, the court of appeals stated that appellants rely only on "supervisory safety acts by Howard to prove Howard's active participation in Valentine's subcontract work [and a] mere concern for safety is not enough to establish a general contractor's active participation under *Cafferkey*." The court of appeals further stated that "nothing in the record indicates that Howard exercised control over the means and manner of Bond's bricklaying."

{¶ 22} We believe, under the circumstances of this case, the trial court and court of appeals properly held that Howard was entitled to summary judgment. In this case, Howard did not actively participate in the work performed by Valentine because it neither gave nor denied permission for the critical acts that led to Bond's injuries—the placing of the materials used by Bond in constructing the wall. In fact, the materials were placed near the unguarded opening by another Valentine employee.

**{¶ 23}** A construction site is inherently a dangerous setting. See *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 600, 613 N.E.2d 1032, 1036 (Pfeifer, J., dissenting). Bond was aware that the materials for the construction of the wall had been placed near the opening by a Valentine employee and that a railing had not been placed in front of the opening.

**{¶ 24}** Furthermore, we reject appellants' assertions that various contractual provisions involving Howard created a duty of care extending from Howard to employees of Valentine. The contractual provisions relied upon by appellants simply demonstrate that Howard retained general supervisory capacity over the construction project and, in particular, that it retained control over safety policies and procedures at the site. The general contractor's retention of the authority to monitor and coordinate activities of subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees. *Cafferkey, supra*, at 113, 21 OBR at 418, 488 N.E.2d at 192.

**{¶ 25}** Appellants also place great emphasis on the fact that Howard had given "directives" to Bond, that Howard made daily inspections at the job site and required Valentine to correct a scaffolding that had been improperly erected by the subcontractor, and that Howard acknowledged that it was responsible for providing floor opening protection and the guarding of the perimeter of the second floor of the project. However, our review of the record reveals that, to some degree, appellants stretch the facts and that these events do not warrant a finding that Howard owed a duty of care to Valentine's employees.

**{¶ 26}** With respect to the "directives" given to Bond by Howard, the record reveals that, on one occasion, Bond merely accommodated Howard's superintendent by cutting certain material outside a building where Bond had been working so that the dust from the cutting of the material would not settle in that building. It is clear that the superintendent's request did not, in any way, direct or

interfere with Valentine's work. Further, the scaffolding incident involved a scaffold that had been *improperly erected by Valentine*. Howard was informed by an authority that the scaffold had been improperly erected and Howard, in turn, informed Valentine that it needed to correct the problem. Finally, Howard's acknowledgment concerning the providing of a guardrail on the second floor was limited to the guarding of the *perimeter* of the second floor—not floor openings as stated by appellants. These actions do not demonstrate that the general contractor actively participated "in any action or decision that led to the * * * injuries." *Cafferkey, supra*, 6 Ohio St.3d at 112, 21 OBR at 418, 488 N.E.2d at 192. Rather, these matters confirm Howard's general supervisory role in the project and/or its general concern for safety at the site.

{¶ 27} At the oral argument of this case, appellants contended that the reason so many cases like this are coming before the various courts of this state is because there is no specific definition of the term "actively participated." Accordingly, we hold that for purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project. Therefore, based on the foregoing, the trial court and court of appeals properly concluded that Howard was entitled to summary judgment.

II

Bond v. Valentine

**{¶ 28}** In addition to the redress sought by appellants against Howard, appellants also sought recovery against Valentine. Appellants contend that material issues of fact exist as to whether Valentine committed an intentional tort against Bond. Therefore, urge appellants, summary judgment was improperly granted in favor of Valentine.

**{¶ 29}** In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus, this court held that in order to prove that an intentional tort was committed by an employer against an employee, the employee must prove "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Further, to avoid summary judgment, it is incumbent upon the employee to set forth specific facts which demonstrate that there is a genuine issue of whether the employer had committed an intentional tort. *Van Fossen v. Babcock & Wilson Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus.

**{¶ 30}** We believe that appellants have not demonstrated the existence of a genuine issue of material fact as to the second prong of the intentional tort test. Specifically, appellants have not set forth specific facts that would permit reasonable minds to conclude Valentine knew that Bond's injuries were substantially certain to occur.

**{¶ 31}** Appellants contend that Bond's injuries were foreseeable and substantially certain to occur because Bond was required to "perform his job duties

within a few feet of the unguarded floor opening." However, we agree with the trial court and court of appeals wherein both courts essentially concluded that Bond's injuries were not the probable consequence of any action or inaction on the part of Valentine. The court of appeals, in addressing appellants' assertions, stated that "[t]he evidence here does not lead to the conclusion that Valentine in fact intended to produce Bond's resulting injuries. Valentine did not set procedural rules mandating where Bond was to place his workpile nor was Bond required to access the workpile by walking into the narrow space between the pile and the floor opening. Further, a diagram of Bond's work area before the trial court suggests that the workpile could have been placed on another part of the landing, away from the danger of the unguarded opening." While "intended" is not the standard for establishing an intentional tort, the court of appeals was correct in its general finding.

{¶ 32} Accordingly, we find that summary judgment was properly entered in favor of Valentine. The judgment of the court of appeals is affirmed in all respects.

*Judgment affirmed.*

RESNICK, F.E. SWEENEY, PFEIFER and FAIN, JJ., concur.

MOYER, C.J., and WRIGHT, J., concur separately.

MIKE FAIN, J., of the Second Appellate District, sitting for COOK, J.

_____

**WRIGHT, J., concurring.**

{¶ 33} The author of the majority opinion deserves praise for refining the test announced in *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, so as to make it clear that a general contractor or an owner will not be liable for exercising its supervisory capacity over another independent contractor. Supervision of a construction job, *i.e.*, coordinating work and directing contractors to perform tasks in accordance with contract

specifications, has never constituted "active participation" in the work of an independent contractor. The very nature of the construction business requires a general contractor or the owner of a construction site to "supervise" a construction job.

**{¶ 34}** On the other hand, actively directing the *manner* in which an inherently dangerous job is performed may subject a general contractor or an owner to liability. See, *e.g., Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326.

MOYER, C.J., concurs in the foregoing concurring opinion.

_____