Plaintiffs-appellants, Jerry and Marian Burnep, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Labmark, Inc., Labmark Roofing, Inc., and Lawrence Behum.
Appellee Labmark, Inc., is a roofing company owned by appellee Larry Behum. Appellee Labmark Roofing, Inc., is not described in the record and appears to be either the same or an affiliated company. For purposes of this appeal there is little to distinguish the positions of the various appellees, and they will be collectively referred to as "Labmark" or "appellees." Labmark entered into a contract with Sherwin-Williams Company to replace a roof on a facility in Franklin County, Ohio. Labmark in turn hired appellant Jerry Burnep as an independent contractor to do the "tear-off" on the Sherwin-Williams Building. This involved cutting and removing the old flat tar roof.
At the time of his injury, appellant was using a machine known as a roof-cutter to section the old roof in preparation for tear-off. As appellant progressed along his cutting line, walking sideways, he caught his foot on the flashing curb of a skylight, causing him to lose his balance. When appellant placed his hand upon the skylight in an attempt to regain his balance, he broke through and fell over twenty feet to the concrete floor below, suffering injuries giving rise to the present action.
As a prelude to the roofing job in Columbus, Sherwin-Williams and Labmark entered into an agreement titled "Contractor Services Agreement," which was a general contractor agreement covering a range of work contemplated by the parties, with a term of three years. By its terms, this agreement incorporated specific job bids, which for the roof work in question included a document titled "Contract Documents and Specifications, 1996 Roof Repairs."
The general Contractor Services Agreement contract between Labmark and Sherwin-Williams contained the following provisions imposing specific safety duties upon Labmark:
 5. Representations, Warranties and Covenants of Contractor. Contractor represents and warrants to Sherwin-Williams that Contractor:
* * *
 (c) [I]s familiar with and will comply with all applicable orders, ordinances, rules, regulations, statutes and laws imposed by any local, state or federal government governing the Services ("Laws") including, without limitation, those Laws dealing with hazardous wastes and materials, the transportation of hazardous materials, occupational safety and health, including process safety management standards, Americans with Disabilities Act, confined space entry, "hot" work, energy source lockout, trenching and shoring, "hazard communication" or "right-to-know" structural work or liability relating to use of scaffolds, ladders, rails, hoists, cranes, stays, supports or other mechanical contrivances and the like.
The "Contract Documents and Specifications," drafted by Sherwin-Williams contained the following paragraphs:
8. SITE INSPECTION
 Each bidder shall make a thorough and complete examination of the roof areas in this document, before submission of a bid, to determine the extent of the work to be undertaken, safety hazards, difficulties in performing the work, site access, and actual measurements to determine amount of materials.
* * *
11. CLEANING AND PROTECTION
 The contractor shall place necessary barriers around and under all work areas where his operations would involve risk of injury to anyone in the area. * * *
At the time of appellant's injury, Labmark had installed guards around the perimeter of the roof, but not around the skylights.
Appellants brought suit against Labmark on the theory that Labmark had "actively participated" in plaintiffs work as a subcontractor, based upon the contractual agreement between Labmark and Sherwin-Williams making Labmark contractually responsible for safety precautions and Occupational Safety and Health Administration ("OSHA") regulatory compliance on the job site, and therefore Labmark was liable for appellant's injuries. Appellees eventually moved for summary judgment, based upon interrogatories, depositions, and affidavits in the record. The trial court granted summary judgment in favor of appellees on the following three grounds. The trial court first found that appellees were not liable to appellant because appellees had not actively participated in the roof tear-off work. As a necessary predicate to this conclusion, the trial court found that appellees' installation of a perimeter safety guard on the roof did not constitute active participation in the tear-off process. Second, the trial court found that violation of specific OSHA regulations calling for skylights to be guarded did not constitute negligence per se giving rise to liability. Third, the trial court found that the skylight was an open and obvious condition of which appellant was aware, and appellees did not possess superior knowledge of the hazard.
Appellants have timely appealed the trial court's decision and brings forth the following single assignment of error:
 In this general contractor/independent contractor negligence action, the trial court erred in granting the defendants-appellees' motion for summary judgment where defendants-appellees exercised exclusive control over the working environment of plaintiff-appellant and where the trial court failed to properly apply the holding in Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628, to the facts in this case.
Pursuant to Civ.R. 56(C), a motion for summary judgment shall be granted only if no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and the evidence, viewed in the light most favorable to the nonmoving party, establishes that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Davis v. Loopco Industries,Inc. (1993), 66 Ohio St.3d 64. An appellate court will independently review the pleadings and evidentiary materials submitted to the trial court in support of and in opposition to summary judgment, and apply the same standard to determine whether the materials submitted establish a genuine issue of material fact. When reviewing the grant of a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. Heritage Mut. Ins. Co.v. Ricart Ford (1995), 105 Ohio App.3d 261.
The liability of general contractors for injuries sustained by independent subcontractors has hinged in Ohio upon "active participation" by the general contractor in the work performed by the subcontractor:
 One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of an independent contractor.
Hirschbach v. Cincinnati Gas Electric Co. (1983), 6 Ohio St.3d 206, syllabus.
While this position adopted by the Ohio Supreme Court places Ohio in the distinct minority of state courts on this issue, it has nonetheless been repeatedly confirmed in subsequent cases: "A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaging in inherently dangerous work." Cafferkey v. Turner Constr. Co. (1986),21 Ohio St.3d 110, syllabus.
The Ohio Supreme Court has applied the above-stated rule of general contractor liability to facts remarkably similar to those before us. In Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, the plaintiff was employed by an independent contractor when he fell through an unguarded stairwell opening in which the stairs had yet to be installed. The plaintiff was aware of the unguarded opening, and the general contractor did not participate or supervise in the subcontractor's work. OSHA regulations required that such floor openings be covered or otherwise guarded. The Supreme Court found no liability on the part of the general contractor, holding that "for purposes of establishing liability to the injured employee of an independent subcontractor, 'actively participated' means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury rather than merely exercising a general supervisory role over the project." Id. at 337. The court further noted that the general contractor's "retention of control over safety policies and procedures [did] not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees." Id. The court furthermore ruled that the general contractor's acknowledgement that it was contractually and statutorily responsible for perimeter guarding did not demonstrate that the general contractor had actively participated in the work of the subcontractor in a manner which would give rise to liability. The court found that these aspects of the working relationship between general contractor and independent subcontractors merely confirmed the general contractor's "general supervisory role in the project and/or its general concern for safety at the site." Id.
In the present case, it is uncontroverted that appellees did not direct, control, or participate in the actual roof tear-off work being performed by appellant when he fell through the skylight. The issue before us, therefore, is whether Labmark's contractual agreement with Sherwin-Williams to retain control over safety issues at the site rises to the level of active participation as defined in Hirschbach, Cafferky, and Bond. The remarkable symmetry of facts between those in Bond and the present case compel the conclusion that it does not.
As in Bond, the general contractor here retained contractual responsibility with the owner for safety on the job site and compliance with applicable safety regulations. In both cases, the general contractor installed some safety measures, but not those which would have prevented the ultimate accident. As stated above, the Supreme Court in Bond found that the above actions were merely consistent with the general contractor's general supervisory role, and did not rise to level of active participation in the subcontractor's work. Thus, the present case falls squarely under Bond, which would bar liability for Labmark as general contractor.
Appellants seek to invoke the more recent case ofSopkovich v. Ohio Edison (1998), 81 Ohio St.3d 628, as a further development in Ohio law on the issue which would mitigate the application of Bond to the present facts. InSopkovich, a painting subcontractor was hired to paint an electrical substation owned by defendant Ohio Edison. To prevent injury to the painting crew, Ohio Edison was required to sequentially deactivate portions of the high voltage power system as the painter's work progressed through the facility. Ohio Edison retained exclusive control over the electrical lines, and the process of de-energizing or re-energizing them as the painting work was completed. One of the painting contractor's employees was electrocuted and severely injured, and the Supreme Court held that, "since Ohio Edison had retained exclusive control over the instrumentality which caused the injury, such involvement in the working environment was sufficient to meet the definition of proactive participation." The court thus concluded that summary judgment in favor of the defendant was improper.
Sopkovich is manifestly distinguishable from the present case. Due to the specialized nature of the electrical control process as well as the ongoing use of the substation during painting, the defendant in Sopkovich did retain exclusive control over the instrumentality which caused the injury. In contrast to the present case, the general contractor did not retain exclusive control over the premises during the roof tear-off process, nor specifically direct the work being performed. Appellant's deposition confirms these facts. Despite their contractual assumption of safety responsibilities, appellees did not attempt to exercise control over the skylight through which appellant fell by erecting safety barriers or otherwise directing work around the skylights. Labmark simply did not exercise exclusive control over the instrumentality or condition which led to appellant's injuries.
Appellants further point to the case of Cefaratti v. MasonStructural Steel Co., Inc. (1998), 82 Ohio St.3d 121, a general contractor liability case also involving a fall through an unguarded opening. The Ohio Supreme Court remanded that case, after summary judgment had been granted for the general contractor, for "consideration of Sopkovich." Unfortunately,Cefaratti is a cryptic one-sentence decision and gives very little guidance as to how Sopkovich might be applied. There is no mention in Cefaratti of overruling Bond, or the long line of cases which preceded Bond. In short, Cefaratti, in the absence of any development of facts or application of law, is of very limited precedential value in the face of the long, well articulated line of contrary cases to which appellee can cite. We therefore conclude that neither Sopkovich norCefaratti give us grounds for disregarding the clear law set forth in Bond, Hirshbach, and Cafferkey, particularly on facts so nearly identical to those found in Bond.
Finally, appellants seek to establish a material fact by pointing to contradictions between the deposition testimony of appellee Lawrence Behum and certain interrogatories. Indeed, some inconsistencies can be found, specifically relating to whether Behum considered the skylights a hazard, and whether he had an oral agreement with appellant to the effect that appellant would provide safety around the skylight. For purposes of summary judgment in the present case, the possible oral agreement to transfer responsibility from Labmark to appellant for safety measures around the skylights do not create a material question of fact. As did the trial court, we consider the facts in the light most favorable to appellants. Faced with contradictory or inconsistent evidence on the existence of an agreement under which appellant would have become responsible for safety around the skylights, we would therefore give credence to the testimony tending to establish that no such agreement had been executed and appellees had retained full safety responsibility. As set forth above, the retention of safety responsibility is not conclusive of liability under Bond, and thus the asserted interrogatories and testimony do not create a material issue of fact in the present case.
In summary, we find that the trial court did not err in finding that appellees were entitled to summary judgment as a matter of law. There remains no material issue of fact, and clear precedent established in Bond is controlling. Appellants' assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is accordingly affirmed.
Judgment affirmed.
PETREE, J., concurs.
KENNEDY, J., dissents.