DECISIONS AND JUDGMENT ENTRY
Mary Marshall, Administratrix of the Estate of Rodney Allen Marshall, brought suit against Kokosing Construction Company ("Kokosing")and Columbus Southern Power Company ("CSPC"), for the wrongful death of her husband, Rodney. The Meigs County Court of Common Pleas granted Kokosing and CSPC summary judgment, from which Marshall appeals. Marshall asserts that the trial court erred in granting Kokosing summary judgment though Rodney worked as an independent contractor, because Kokosing actually participated in Rodney's job performance and breached its duty to Rodney by failing to exercise ordinary care. We disagree, because Kokosing did not give permission for the critical act that led to Rodney's death. Marshall also asserts that the trial court erred in granting summary judgment in favor of CSPC because a genuine issue of material fact exists as to whether CSPC breached the requisite standard of care to Rodney. We disagree, because CSPC had no duty to protect Rodney from harm because his injury was unforeseeable. Accordingly, we affirm the judgment of the trial court.
 I.
In 1995, the state contracted with Kokosing to extend State Route 7 approximately two miles beginning at Meigs County High School. Kokosing ordered some of the sand and gravel ("aggregate") for construction from Owl Creek. In turn, Owl Creek contracted with independent truck drivers, including Rodney's trucking firm, A L Trucking Firm, to haul the aggregate to the construction site.
During April 1995, Rodney delivered numerous loads of aggregate to Kokosing's construction site. On April 20, 1995, Kokosing placed an order with Owl Creek for aggregate to be delivered the next day to the construction site by the school on the west side of the stockpile. Owl Creek completed an order form and contacted Rodney with the dumping information.
The next day, Rodney dumped a load of aggregate at the Kokosing construction site on the west side of the stockpile. While dumping the aggregate, Rodney's truck bed came into contact with electrical power lines, killing him. Marshall, Rodney's widow and administratrix of his estate, filed a wrongful death action.[1]
Kokosing and CSPC filed for summary judgment.
Kokosing argued that Rodney worked as an independent contractor in construction, an inherently dangerous activity. Kokosing asserted that it neither directed Rodney to dump the aggregate under the power lines, nor gave him permission to do so. Therefore, Kokosing argued that it did not actively participate in Rodney's work. As such, Kokosing owed Rodney no duty of care and could not be held liable for his death. In its motion for summary judgment, CSPC argued that as Kokosing did not actively participate in Rodney's work, he was not required to work under the power lines. Therefore CSPC argued that it owed Rodney no duty of care.
In support of its motion for summary judgment, Kokosing attached the affidavit of Joseph Sheets, Kokosing's project superintendent, who averred that Kokosing established specific locations for the sand deliveries on the west end of the project. Sheets averred that during its ordinary course of business, Kokosing instructed all haulers to report to it prior to dumping for specific delivery locations. If the delivery required dumping in a dangerous area, Kokosing provided a "spotter" to the haulers to insure that they dumped the aggregate safely.
Rocky Allen, Rodney's employee, stated in his deposition that on the morning of Rodney's death, Rodney told Allen the general location for delivery, but told him that they would not dump at the site the Kokosing employees usually directed because Rodney feared that the muddy road conditions would harm his trucks. Rodney told Allen that he should dump where Rodney instructed.
Rodney filled his truck and proceeded to the construction site. Sheets averred that Rodney never reported to Kokosing for the specific location to dump the aggregate. When Allen arrived at the construction site fifteen minutes later, he found Rodney's truck on asphalt with the truck bed touching the power lines. Barricades that would have blocked Rodney from accessing the location had been moved and no Kokosing employees were in the area. Sheets averred that he believed Rodney moved the barricades, without Kokosing's permission or supervision, in order to dump the sand from the asphalt.
The trial court granted Kokosing's and CSPC's motions for summary judgment. Marshall appeals the judgment of the trial court, asserting the following assignment of error for our review:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF BOTH DEFENDANTS BECAUSE (1) THERE EXIST GENUINE ISSUES OF MATERIAL FACT, AND (2) REASONABLE MINDS CAN DIFFER ON THE OUTCOME OF THIS CASE.
 II.
Appellate review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question."Morehead v. Conley, 75 Ohio App.3d at 411-12. See, also, Schwartzv. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
Summary judgment is appropriate when the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his or her favor. Civ.R. 56(A). See Bostic v. Connor (1988), 37 Ohio St.3d 144,146; Harless v. Willis Day Warehouse Co. (1978),54 Ohio St.2d 64, 66; Morehead v. Conley (1991), 75 Ohio App.3d 409,411.
The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresherv. Burt (1996), 75 Ohio St.3d 280, 294, citing Mitsefff v.Wheeler (1988), 38 Ohio St.3d 112, 115. The moving party bears this burden even for issues that the non-moving party may have the burden of proving at trial. Id. "However, once a movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleading. * * * He must present evidentiary materials showing that a material issue of fact does exist." Morehead v.Conley, 75 Ohio App.3d at 413.
 A.
Marshall asserts that several issues of material fact exist for trial. However, our review of the record and the briefs lead us to conclude that Marshall's numerous issues are ancillary to the threshold question of whether Kokosing actively participated in Rodney's work.
Marshall asserts that by ordering Rodney to dump the aggregate at the west end of the stockpile at the construction site, Kokosing directed Rodney in the critical act which led to his death. Therefore, Marshall argues that she presented evidentiary materials to create a genuine issue of material fact as to whether Kokosing actively participated in Rodney's work and whether Kokosing breached its duty of ordinary care.
Kokosing argues that Marshall provided no evidence that Kokosing controlled the sole authority to require Rodney to dump the sand underneath the electrical wires. Rather, Kokosing asserts that Rodney acted within his own discretion in choosing a site' to dump the sand. Thus, Kokosing contends that it did not owe Rodney any duty of care.
Generally, "where an independent contractor undertakes to do work for a [principal] in the very doing of which there are elements of danger, no liability ordinarily attaches to the [principal] who engaged the services of the independent contractor." Bond v. Howard Corporation (1995), 72 Ohio St.3d 332,334 quoting Wellman v. E. Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph one of the syllabus. A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to the employees of the subcontractor who are injured while engaged in inherently dangerous work. Cafferkey v. Turner Constr.Co. (1986), 21 Ohio St.3d 110, syllabus. If, however, the principal actually participates in the job operation performed by the independent contractor and does not eliminate a hazard by failing to exercise ordinary care, the principal can be held responsible for the injury or death of an employee of the independent contractor. Hirschbach v. Cincinnati Gas Elec. Co.
(1983), 6 Ohio St.3d 206, 207-208. "Actual participation" means that the general contractor: (1) directed the activity which resulted in the injury and/or (2) gave or denied permission for the critical acts that led to the injury to the employee of the independent contractor. Bona v. Howard Corp., supra, at syllabus.
Here, we find no evidence to create a genuine issue of material fact as to whether Kokosing directed Rodney in the critical act that led to his death, dumping the aggregate under activated power lines. Kokosing presented evidence that during the course of its business, it gave subcontractors general dumping instructions prior to their arrival to the construction site. After arriving, Kokosing employees would give specific dumping instructions and provide safety "spotters" to insure safety if the dumping took place under dangerous conditions.
While evidence exists to suggest that prior to arriving at the construction site, Rodney knew to dump at the west end of the stockpile, Marshall presented no evidence that Kokosing specifically directed Rodney to dump the sand under the power lines. Indeed, the record indicates that Rodney acted within his own discretion to choose a dumping site. Sheets averred that Rodney did not report for specific dumping instructions on the morning of the accident. Allen testified that Rodney stated that he would not dump the sand where Kokosing usually specified because he feared that the muddy road conditions would harm his truck. To reach the dump site under the power lines, Rodney had to move barricades erected by Kokosing. Finally, contrary to Kokosing's ordinary business practices, no Kokosing employees were near the scene of the accident, to supervise Rodney or to "spot" him during a dangerous dump.
Marshall produced no evidence to refute that the "critical act" that led to Rodney's death was his choice to dump the aggregate from the asphalt under the power lines. Rather, the evidence shows that Rodney himself made the decision to dump from under the power lines instead of from some other location at the west end of the school. Kokosing never directed Rodney to dump the sand specifically under the power lines; it only generally directed Rodney to dump the sand at the west side of the project. Rodney alone possessed the ability to prevent his death by dumping the sand away from the power lines.
After reviewing the evidence, we do not believe that Kokosing's general supervisory direction that Rodney dump the aggregate at the west end of the lot provided the sole act that led to Rodney dumping the aggregate under the power lines. Rodney could have dumped the aggregate at the stockpile, one hundred and twenty five feet from the power lines, or at another location on the west side of the project away from the power lines. Furthermore, the record shows that Rodney was familiar with the danger posed by power lines, had visited the construction site numerous times, and had exited his truck prior to dumping the aggregate in the past, which indicates he was aware, or should have been aware of the danger of electrocution. Even when considered in the light most favorable to Marshall, the record does not support her contention that reasonable minds could conclude that Kokosing's directions to dump the sand at the west end of the project was the "critical act" that led to Rodney's death. Rodney's own negligent operation of the dump truck, resulting in contact with the electrical wires, caused his death. As such, Kokosing owed no duty of care to Rodney as an independent contractor. Therefore, we find that the trial court did not err in granting Kokosing summary judgment.
 B.
Marshall also argues that the trial court erred by entering summary judgment in favor of CSPC. Marshall contends that a genuine issue of material fact exists as to whether CSPC exercised the highest degree of care consistent with its operation in the construction, maintenance, and inspection of wires and poles.
CSPC maintains that whether it breached the requisite standard of care is irrelevant because CSPC owed Rodney no legal duty. Specifically, CSPC argues that, as Rodney was not required to dump the sand underneath the power lines, his injury was unforeseeable and therefore, the law imparts no duty on CSPC.
To withstand summary judgment, Marshall must prove all of the elements of negligence, including existence of a duty, breach of duty, and injury resulting proximately therefrom. See Amburgey v.Dayton Power Light Co. (May 15, 1984), Montgomery App. No. CA 8248, unreported. A power company must, in the construction, maintenance, and inspection of its line equipment, act to avoid causing injury to another if and when such injury is one which might be reasonably anticipated. Id. A power company may reasonably anticipate injury to persons required to work underneath power lines. Id. (Emphasis added.)
Here, we have already determined that Rodney presented no evidence to create a genuine issue of material fact as to whether Kokosing directed Rodney to dump the sand directly under the power lines. As no genuine issue exists as to whether Rodney was required to dump the sand under the power lines, we also find no genuine issue of material fact as to whether Rodney's injury was foreseeable to CSPC. Therefore, we find, as a matter of law that the trial court did not err in granting CSPC summary judgment. Accordingly, we overrule Marshall's only assignment of error.
JUDGMENT AFFIRMED.
[1] Marshall joined, but later voluntarily dismissed claims against Owl Creek and Floyd S. Pike Electrical Contractor, Inc., pursuant to Civ.R. 41.