DECISION
Defendant-appellee, Techneglas, Inc., contracted with defendant-appellee, Elford, Inc., to renovate its old cafeteria into a fitness center. Elford was the construction manager of the project. On March 8, 1995, Elford was verbally notified by BBC 
M Engineering, Inc., that a sample of gypsum roof deck taken from the fitness center tested positive for asbestos fibers. Elford notified the contractors of the possible exposure to asbestos and sealed the area. No work was to be completed until the asbestos was removed.
Plaintiff-appellant, Joseph T. DuBoe, was employed by Accurate Fabrication, Inc., as a sheet metal worker. Accurate was a subcontractor of Mariah Mechanicals, who was the subcontractor in charge of heating, cooling and plumbing mechanicals. On March 15, 1995, Accurate's foreman, Don McGeehan, directed DuBoe and another co-worker onto the roof of the fitness center to remove an HVAC unit. While DuBoe was inside the unit attempting to dismantle it, he was exposed to asbestos. He sustained upper and lower respiratory injuries.
DuBoe and his wife, Bonnie R. DuBoe ("appellants"), filed suit against Elford, Techneglas, BBC M, Chryatech (an asbestos abatement company), North American Asbestos Services, Inc., and Alloyd Asbestos Abatement Company for negligence in the identification and removal of asbestos from the premises. Appellants voluntarily dismissed BBC M, North American, Chryatech and Alloyd from the suit. Appellants filed a motion for partial summary judgment alleging that the affirmative defenses of Elford and Techneglas, including failure to state a claim upon which relief can be granted; failure to join indispensable parties; prohibition of claim by the workers' compensation statute; and lack of proximate cause, were unavailable. This motion was denied. Elford and Techneglas each filed a motion for summary judgment which the trial court granted. Appellants have appealed and raise the following "Issues Presented for Review," which we shall address as assignments of error:
Issue #1:
 The Trial Court erred by granting the Motion for Summary Judgment of Defendant-Appellee Techneglas and holding that no genuine issue of material fact exists as to Plaintiff-Appellant's claim against Techneglas.
 Issue #2:
 The Trial Court erred by granting the Motion for Summary Judgment of Defendant-Appellee Elford, Inc. and holding that no genuine issue of material fact exists as to Plaintiff-Appellant's claim against Elford, Inc.
In both issues presented for review, appellants contend that the trial court erred in granting the motions for summary judgment. In order to grant a motion for summary judgment the trial court must find, while construing the evidence in favor of the non-moving party, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Williams v. First United Church of Christ
(1974), 37 Ohio St.2d 150, 151.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio stated that the moving party, on the grounds that the non-moving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claim. Once the moving party satisfies this initial burden, the non-moving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. The issue presented by a motion for summary judgment is not the weight of the evidence, but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or non-existence of genuine issues of fact.
In the syllabus of Cafferkey v. Turner Constr. Co. (1986),21 Ohio St.3d 110, the Ohio Supreme Court held that "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." In Bond v. Howard Corp.
(1995), 72 Ohio St.3d 332, the court found that a subcontractor working at a construction site is engaged in inherently dangerous work. The court also defined "actively participated" as meaning "the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." Bond, at syllabus. The court also stated that "[t]he general contractor's retention of the authority to monitor and coordinate activities of subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees." Bond, at 337, citing Cafferkey, at 113.
In Michaels v. Ford Motor Co. (1995), 72 Ohio St.3d 475, Ford Motor Company hired Lathrop Contracting as the general contractor to construct a paint building. Doane Electric was an electrical subcontractor who employed the plaintiff. A Ford employee instructed Lathrop's assistant superintendent to cut holes in the floor on the second floor pursuant to specifications in the construction contract. Plywood was placed over the holes by Lathrop without securing it to the floor, and plaintiff fell through the hole to the floor below. The court held that Ford exercised a proper supervisory role by monitoring work progress, interpreting plans and specifications, and ensuring that construction was completed, but did not direct the activity which led to plaintiff's injury. That is, Ford did not direct the manner in which the holes in the floor should be safeguarded. Thus, Ford was not liable. In a footnote, the court explained that, when determining if a duty of care is owed pursuant to the frequenter statutes, R.C. 4101.11 and 4101.12, the legal test is the same for owners and general contractors. The test is: "Did the party have custody or control of the injured employee, the employment, or the place of employment?" Michaels, at 478, fn. 3. The answer depends on the circumstances of the case, not the status of the parties.
In this case, Techneglas is the owner of the fitness center facility and Elford was the construction manager or general contractor. In his deposition, Martin Mudrak, Jr., the construction superintendent for Elford, testified that, on March 8, 1995, he was informed that tests confirmed the presence of asbestos in the exterior roof deck and he pulled all the workers from the job. He ordered all Elford employees and all subcontractors out of the fitness center and barricaded the area with Visqueen and signs. Elford sent a letter to Accurate Fabrication on March 8, 1995, indicating that a sample of gypsum roof deck tested positive for asbestos fibers and that Accurate's employees may have already been exposed. At the job meeting, held on March 9, 1999, all subcontractors, including Don McGeehan, Accurate's field foreman, were informed that asbestos was found. Also, Mudrak testified that the minutes from such meetings were given to the contractors. Mudrak also testified that he had no knowledge that subcontractors were working in the fitness center area on March 15, 1995. DuBoe, himself, testified in his deposition that the fitness center construction job was shut down approximately March 7 or 8, 1995, because of asbestos, stating, "[e]verything" was shut down, although he later testified that only the lower part of the building was closed. (DuBoe Depo. 49.) DuBoe also testified that McGeehan directed him to go on the roof of the fitness center on March 15, 1995, and no one from Elford directed him.
In their first issue for review, appellants argue that Techneglas is liable because it failed to identify and remove asbestos-containing material before DuBoe entered the premises. Appellants submitted the affidavit of Mark A. Karaffa, who is the Director of the Environmental Sciences Group of BHE Environmental, Inc. Karaffa concluded that Techneglas failed to fulfill its duty to exercise due diligence to verify the presence of asbestos because it did not conduct enough tests of the fitness center to determine the presence of asbestos before the renovation began.
Federal statutes and regulations imposed requirements on Techneglas, as owner of the building under construction, to take reasonable steps to test and abate asbestos before permitting contractors to perform any work on the premises. Pursuant to that duty, Techneglas retained the services of BBC M Engineering to assist in the asbestos sampling. BBC M recommended that six samples of building material be procured, including samples from the roof; however, a Techneglas employee, Lloyd Crabtree, instructed BBC M to take only one sample from the plaster on the ceiling above the door. The single sample was tested at the direction of Crabtree and the test results showed no presence of asbestos. Because the test results of the single sample showed no presence of asbestos, Techneglas allowed the project to commence. Subsequently, after suspicious-looking materials were found, more testing was conducted and the presence of asbestos was identified and the construction job was halted. DuBoe was then ordered to perform work on the roof of the construction site. He was exposed to asbestos while working on the roof and claims that he sustained injuries due to his exposure to asbestos. This evidence raises an issue of material fact as to whether Techneglas exercised ordinary care in eliminating hazards on the construction site. Construing the evidence in appellants' favor, since Techneglas' employee instructed BBC M to test only one area, Techneglas may have "actively participated" in the work. However, any alleged negligence by DuBoe's employer, subcontractor Accurate Fabrication, Inc., in directing DuBoe to remove the HVAC unit from the roof is a question of intervening cause which may relieve Techneglas from liability. Thus, summary judgment is not appropriate in favor of Techneglas and appellants' first issue for review is well-taken.
By their second issue presented for review, appellants argue that Elford failed to communicate to subcontractors that asbestos had been found and failed to prohibit contractors from working on the roof. DuBoe testified that Elford shut down the project and did not direct him to remove the HVAC unit. McGeehan testified that he knew asbestos had been found in the fitness center. He also testified that he directed DuBoe to remove the HVAC unit. DuBoe testified that no one from Elford directed him to go onto the roof. Mudrak testified that he was not aware that any subcontractors were working on March 15, 1995. Thus, appellants have not provided evidence that Elford actively participated in Accurate's work. Appellants' second issue presented for review is not well-taken.
For the foregoing reasons, appellants' first issue presented for review, which we addressed as an assignment of error, is sustained and appellants' second issue presented for review, which we addressed as an assignment of error, is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part and cause remanded.
BROWN and KENNEDY, JJ., concur.