OPINION
This appeal is taken by Plaintiff-Appellants, Kenneth Friend Jr., et al from the judgment entered by the Court of Common Pleas of Marion County granting Defendant-Appellees', Buckeye Industrial Warehousing 
Development Corporation, motion for summary judgment.
In November 1993, Gary White (hereinafter "White") approached Charles Luyster (hereinafter "Luyster"), President of Buckeye Industrial Warehousing Development (hereinafter "Buckeye"), to offer his services as an independent contractor in the repair of Buckeye's leaking roof. Luyster accepted White's offer and hired him to fix Buckeye's roof.
White then asked several roofers in the neighborhood with whom he had previously worked to help him undertake the Buckeye roofing repair. White hired Kenneth Friend, Jr. (hereinafter "Friend") and Dave Crabtree (hereinafter "Crabtree") among others. All of the men hired by White and deposed for the purposes of litigation purported to be experienced "roofers."
Several months after the job had begun White and his crew were still not finished. The severe winter weather had impeded White's ability to finish the roof within a reasonable amount of time. Finally on March 4, 1994, White and his crew went to Buckeye to finish replacing the new roof, which, according to testimony, was nearly complete. When White and his crew arrived at Buckeye they decided that the weather conditions were not conducive to finishing the roofing and they left the site. Upon return home, White received a telephone call from Luyster. Luyster told White that the weather was not that bad and he expected White to finish the roof. White agreed with Luyster and informed his crew that they were to return to Buckeye to finish the roofing job.
The entire crew returned and made their way up to the roof. Inside the warehouse Luyster had turned on the heater so that the roof would be clear of ice and snow. Once on the roof the crew including Friend and Crabtree began to install the finishing touches. Friend and Crabtree began to "cap" the roof. Neither man was wearing a safety rope. Sometime before lunch while Friend and Crabtree were placing "caps" on the peak of the warehouse, Crabtree looked up to say something to Friend and as he looked up Friend began to take a step forward. As Friend stepped forward his foot slipped and he immediately fell to the roof and began to slide down out of control. Crabtree grabbed a safety rope to his left and lunged for Friend but missed him. Friend fell from the roof, nearly 30 feet, sustaining serious injuries to his entire body.
In February 1999, Friend filed a complaint against Buckeye alleging that Buckeye had breached its statutory duty of care owed to Friend. On March 5, 1999, Buckeye filed its answer denying Friend's allegations. On June 17, 1999, Buckeye filed a motion for summary judgment alleging that Buckeye did not owe Friend a Duty of Care under Ohio Law because of the hazards "necessarily and inherently present" in roofing work and because Buckeye did not actively participate in the roofing job.
Friend filed his motion in opposition to summary judgment. Friend argued that Buckeye indeed owed Friend a duty of care because it "actively participated" in the roofing work. In support of his assertion that Buckeye actively participated through its President, Luyster, Friend offered the following evidence: 1) Mr. Luyster had decided the manner in which the repairs were to be made, picked, ordered and had delivered the roofing materials and placed the materials on the roof; 2) Mr. Luyster further directed the day-to-day activities surrounding the job and gave specific instructions to the Plaintiff; 3) Mr. Luyster inspected various aspects of the work, made corrections to work already performed, and instructed the Plaintiff and other workers on the job site to install various materials.
On February 17, 2000, the trial court granted Buckeye's motion for summary judgment.
On appeal from that judgment entry Friend presents the following sole assignment of error:
 The trial court erred in granting summary judgment to the Defendants, Buckeye Industrial Warehousing Corporation.
In his sole assignment of error Friend claims that the trial court erred by granting summary judgment to Buckeye because there was a genuine issue of material fact concerning Buckeye's "actual participation" in the roofing work that injured Friend.
When reviewing summary judgment, we review the judgment independently without any deference to the previous determination made by the trial court. Conley-Slowinski v. Superior Spinning Stamping Co. (1988),128 Ohio App.3d 360. The standard of review in this court is de novo.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 553 N.E.2d 597.
Civil Rule 56 requires the court to determine from the materials properly to be considered and timely filed in the action, resolving all doubts against the movant, that no genuine issue exists as to any material fact, that reasonable minds could reach no other conclusion and that the moving party is entitled to judgment as a matter of law. Therefore summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most favorable in the light of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R.56(C); Bosticv. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.
The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett
(1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.
Once the moving party meets its burden, the non-moving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue of material fact for trial. A. Doe v. First PresbyterianChurch (USA) (1998), 126 Ohio App.3d 358, 364; Civ.R. 56(E). The nonmoving party may not rest on the mere allegations of her pleading.State ex rel. Burns v. Athens Cty. Clerk of Courts (1998)83 Ohio St.3d 523, 524 citing Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199; Civ.R. 56(E). Most importantly, the non-movant's failure of proof on an essential element of the case necessarily renders all other facts immaterial. Celotex Corp.v. Catrett (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265.
Friend makes one argument in support of his contention that the trial court erred in granting summary judgment in favor of Buckeye. Specifically, Friend argues that the trial court erred when it found that Buckeye through its President, Luyster had not "actively participated" in the roofing project undertaken by Friend and others and that genuine issues of material fact exist supporting Friend's assertion that Buckeye did indeed "actively participate".
In opposition Buckeye argues that it indeed does not dispute any of the facts presented by Friend on appeal nor did they dispute those facts in their motion for summary judgment. Rather Buckeye argues that Luyster's activities concerning the roofing project as portrayed and presented by Friend do not rise to the level of "active participation" required by law and thus Buckeye cannot be held liable for the injuries suffered by Friend, an employee of the independent contractor hired to perform the roofing project.
As stated above, we review a summary judgment independently of the trial court's decision. Should Friend have failed to offer evidence which if believed would tend to prove an essential element of the case, the remaining fact issues are immaterial.
A landowner who engages the employment of an independent contractor, "ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work," when the independent contractor and its employees "proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." Wellman v. East Ohio Gas Company (1953), 160 Ohio St. 103, paragraph two of the syllabus. However, the Ohio Supreme Court has carved out an exception to that principle when the landowner "actually participates" in the job operation being conducted by the contractor and its employees. Hirschbach v. Cincinnati Gas Elec. Co. (1983),6 Ohio St.3d 206. The Supreme Court held:
 One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor, and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.
In Bond v. Howard Corp. (1995), 72 Ohio St.3d 332 at the syllabus, the Supreme Court went on to define "actively participated" as follows:
 For purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project.
The Supreme Court went on to state that a "general contractor's retention of the authority to monitor and coordinate activities of subcontractors and retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending the duty of care from a general contractor to a subcontractor's employees." Bond at 337 citing Cafferkey v. Turner Constr. Co. (1986), 21 Ohio St.3d 110,488 N.E.2d 189.
The record on appeal discloses the following facts as supported by deposition testimony: 1) Friend apparently slipped on a dusty material and fell off the roof; 2) Luyster, President of Buckeye, supplied the roofing material and placed the roofing material on the roof; 3) Luyster often observed the activities of White and his crew to ensure the roofing proceeded in compliance with specifications; 4) Luyster occasionally spoke to the workmen and may have even told them how he wanted the roofing to be done; 5) Luyster often turned on the heater in the warehouse where the roofing was occurring to ensure the roof would be heated; 6)There is no evidence that Luyster had knowledge of the dusty substance that Friend claims caused his fail or that the dusty substance actually caused his fall.
The foregoing evidence submitted by Friend is undisputed. Friend has demonstrated that Buckeye had some supervisory role in roofing project. However, Buckeye's attention to work progress and quality of the roofing work does not rise to the level of active participation. Friend has failed to demonstrate that Buckeye actively participated in the "critical act" that led to Friend's slip and fall off of the roof. As stated, there is no evidence that Buckeye knew of the dusty substance upon which Friend slipped. Furthermore, evidence presented seems to indicate that Luyster may not have even been present at the time of the fall and safety mechanisms available to Friend through Buckeye and Luyster were overlooked by Friend and most of the subcontractors.
No genuine issue of material fact having been shown Friend's sole assignment of error is overruled and the judgment of the Court of Common Pleas affirmed.
HADLEY, P.J., and SHAW, J., concur.