OPINION
{¶ 1} Michael Reno and his wife, plaintiffs-appellants, filed a complaint against defendants Concrete Coring, Co., Staffco Construction, Inc., and Shook Building group, after an industrial accident. The trial court rendered summary judgment in favor of defendants Shook and Staffco on June 21, 2004, and summary judgment in favor of Concrete Coring on July 13, 2004. It is from these two summary judgments that the appellants are appealing.
 {¶ 2} The appellants' claim is that Concrete Coring was liable to them because of an intentional tort, inasmuch as recklessness or negligence are ruled out because appellant has received workers' compensation for his injuries. The appellants' claims against the Shook Building Group and Staffco are based upon the frequenter statutes on the grounds that these two defendants participated in the management of the operation and thereby rendered themselves liable. These claims are set forth in the appellants' five assignments of error, as follows:
 {¶ 3} "The trial court erred in ruling that reasonable minds could not differ with regards to the issue of whether defendant/appellee Concrete Coring, Inc. committed an intentional tort against plaintiff/appellant Michael Reno.
 {¶ 4} "The trial court erred in concluding that reasonable minds could not differ on the issue of whether defendant/appellee was liable to plaintiff/appellant for attorneys fees as a result of any intentional tort.
 {¶ 5} "The trial court erred in concluding that reasonable minds could not differ on the issue of whether any defendant/appellee was liable to plaintiff/appellant for punitive damages, or liable to plaintiff/appellant Ginny Reno for loss of consortium.
 {¶ 6} "The trial court erred in concluding that defendant shook building group was not liable to plaintiff/appellant under the frequenter statutes.
 {¶ 7} "The trial court erred when it concluded that defendant staffco was not liable to plaintiff/appellant under the frequenter statutes."
 {¶ 8} The trial court entered two summary judgments for the defendants because the claims against them differ under the law and on some of the facts. The facts are set forth in both summary judgments but since they differ in some respect as to their applicability we will render as following relevant quotes from both summary judgments. The summary judgment against the appellants and in favor of Shook and Staffco is as follows in relevant parts:
 {¶ 9} "I. FACTS
 {¶ 10} "On April 18, 2000 Plaintiff Michael Reno was an employee of Concrete Coring Company (`CCC'). Plaintiff was assigned to work on a construction project in Dayton that was initiated by the Miami Valley Regional Transit Authority (`RTA'). RTA hired Staffco Construction, Inc., (`Staffco') as one of the general contractors. The Staffco was responsible for engaging other contractors to work on various parts of the project. RTA also hired Defendant Shook Building Group (`Shook') as the construction manager. The contract between RTA and Shook was a boilerplate construction contract. As construction manager, Shook was responsible for monitoring the project and seeing that it was done properly. Part of the contract stated that Shook had the authority to oversee the safety policies and procedures of the project. Similarly, the contract between RTA and Staffco was a boilerplate construction contract stating that Staffco was to oversee workplace safety.
 {¶ 11} "CCC was hired by Staffco as a subcontractor to remove three sections of concrete flooring to permit installation of a new stairwell. Timothy Deel, of CCC had already cut a portion of the third floor before Plaintiff worked on the project. When cutting out portions of the floor, shoring is erected under the floor to give adequate support. CCC was responsible for providing the shoring. Mr. Deel had used shoring when cutting the third floor. On April 18, 2000 Plaintiff was assigned to assist Mr. Deel with cutting the second floor. In Plaintiff's deposition, taken on September 27, 2002, he stated that Mr. Deel told him where to make the cuts on the second floor. Plaintiff also stated that he did not know how Mr. Deel knew where to cut. In his deposition, Mr. Deel stated that he was told where to cut by Mark Justice, and [sic] employee of Staffco. On April 28, 2004, Plaintiff provides affidavit testimony that he and Mr. Deel were together told to make the cuts by Mr. Justice and Andrew Goetz, an employee of Shook. In a previous deposition, Mr. Goetz stated that he had not spoken to any employees of CCC on the date of the accident.
 {¶ 12} "Mr. Deel and Plaintiff began cutting the second floor without shoring in place. They did not use shoring because the shoring on sight was insufficient in height to use on the second floor. Mr. Deel and Plaintiff were aware of the danger of not using shoring. Mr. Deel alerted CCC that the shoring on sight was not sufficient, and was instructed to get shoring from a supplier. Instead, Mr. Deel and Plaintiff proceeded with making preliminary cuts in the floor without obtaining shoring from a supplier. Plaintiff voiced his concerns to Mr. Deel about cutting without shoring, and Mr. Deel told Plaintiff that they would obtain shoring after lunch. However, Mr. Deel did not obtain shoring after lunch and continued to make cuts in the floor.
 {¶ 13} "At some point after lunch, an unidentified Shook employee told Mr. Deel and Plaintiff that they either needed to finish the job or get to the point where they could move their stuff out of the way in order to move drywall through. Later, still without any shoring, Mr. Deel began using a chipping hammer to remove concrete from the floor. This caused increased vibrations of the floor. After several minutes, the slab collapsed, injuring Plaintiff. Plaintiff has filed suit against Defendants Shook and Staffco for negligence in failing to provide a reasonably safe work place and failure to warn of unsafe conditions.
 {¶ 14} "II. LAW AND ANALYSIS
 {¶ 15} "* * *
 {¶ 16} "In Ohio, when an employee of a subcontractor is injured while performing work for his or her employer that is inherently dangerous, the owner and/or general contractor owes no duty of care to that employee.Wyczalek v. Rowe Construction Services Co. (2001), 148 Ohio App.3d 328,336, citing Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628,636-37. Engaging in a construction job is an inherently dangerous job, and therefore a general contractor or construction manager has no duty of care to the employees of a subcontractor. Wyczalek,148 Ohio App.3d at 336. However, there is an exception to this rule. If the construction manager actively participates in the subcontractor's operations by either (1) directing or exercising `control over the work activities of independent contractor's employees;' or (2) `retaining or exercising control over a critical variable in the workplace.'Sopkovich, 81 Ohio St. 3d at 642-43. The issue as to the present motions is whether reasonable minds could differ as to Shook or Staffco's active participation in CCC's operations by exercising control over the work activities of CCC, or controlling a critical variable, namely safety, on the construction site.
 {¶ 17} "a. Defendants' Exercise of Control Over the Work Activities ofCCC
 {¶ 18} "In Michaels v. Ford Motor Co. (1995), 72 Ohio St. 3d 475, 479, the Ohio Supreme Court stated:
 {¶ 19} "[s]upervision of a construction job, i.e., coordinating work and directing contractors to perform tasks in accordance with contract specifications, has never constituted `active participation' in the work of an independent contractor. The very nature of the construction business requires a general contractor or the owner of a construction site to `supervise' a construction job.
 {¶ 20} Similarly, active participation by a construction manager or general contractor requires something more than exercising a supervisory role over the construction project. Kratzer v. General Motors Corp.
(Feb. 27, 1998), Montgomery App. Nos. 16590, 16593, 16594, 1998 Ohio App. LEXIS 1655, unreported. Active participation is more than just telling the subcontractor where or when to perform the work. It requires instruction or involvement to the subcontractor as to how to perform certain work. Gross v. Western-Southern Life Ins. Co. (1993),85 Ohio App.3d 662, 670.
 {¶ 21} "In Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, an employee of a subcontractor was constructing a wall using material that was placed near an unguarded hole in the floor. The employee fell through and sued the general contractor for negligence. The court noted that the general contractor did not actively participate in the subcontractor's work because it neither gave nor denied permission for the critical acts-placing the materials near an unguarded hole-that led to the injuries.
 {¶ 22} "Plaintiff points to two instances where he asserts that Shook exercised control over CCC's work activities. The first was in the morning before the accident, where Plaintiff says that Mr. Goetz from Shook and Mr. Justice from Staffco instructed Plaintiff and Mr. Deel where to make the cuts.
 {¶ 23} "Shook argues that the first instance should be disregarded because it is in direct contradiction with previous sworn statements. In an affidavit dated April 28, 2004, Plaintiff states that he and Mr. Deel were instructed where to make the second floor cuts by Mr. Goetz of Shook and Mr. Justice of Staffco. However, in a deposition dated September 27, 2002, Plaintiff states that he did not know how Mr. Deel knew where to cut the second floor. This testimony is in accordance with that of Mr. Deel, who testified that only Mr. Justice of Staffco instructed him where to cut, and Mr. Goetz, who testified that he had no conversations with any CCC employee the morning of the accident. The Second District Court of Appeals has repeatedly held that when a non-movant submits an affidavit contradicting prior testimony in an attempt to defeat a motion for summary judgment, there must be some explanation for the inconsistency or the evidence is not to be considered. Gallagher v.O'Connor, 2d. Dist. No. 19702, 2003-Ohio-5095; McKinley v. Chris' BandBox, 2d Dist. No. 19799, 2003-Ohio-4086. The affidavit from April 28, 2004 directly contradicts Plaintiff's previous testimony, and also that of Mr. Deel and Mr. Goetz. Plaintiff has offered no explanation for the inconsistency. It appears that this affidavit was filed to create a genuine issue of fact. Thus, the Court will disregard this testimony.
 {¶ 24} "The second is when an unidentified Shook employee told Plaintiff and Mr. Deel to either finish the job or get to a point where drywall could be moved through. In previous 2nd District cases where the construction manager filed for summary judgment, the court focused on whether the construction manager gave or denied permission for the critical acts that led to the injury. Kratzer v. General Motors Corp.
 {¶ 25} (Feb. 27, 1998), 1998 Ohio App. LEXIS 1655, unreported; Myersv. Charles Simms Development Corp. (Dec. 27, 2002), 1998 Ohio App. LEXIS7198, unreported. The critical act in this case is the decision by Mr. Deel not to use shoring to support the floor. Shook had no involvement with this decision. The unidentified Shook employee that spoke with Mr. Deel and Plaintiff while they were cutting the floor was carrying out the typical role of a construction manager. One single instruction by an unidentified Shook employee does not rise to the level of active participation. Because Shook did not give or deny permission for the critical act that led to the injury, reasonable minds could not differ as to whether Shook's active participation by exercising control over the work activities of CCC.
 {¶ 26} "Plaintiff asserts that Staffco actively participated in his work activities because Mr. Justice of Staffco instructed Mr. Deel where the cuts were to be made. However, this does not rise to the level of active participation as courts have repeatedly defined it. Plaintiff does not assert that Staffco told Mr. Deel how to make the cuts, or gave or denied permission to Mr. Deel to proceed with cutting without shoring. Rather, Staffco simply instructed Plaintiff where and when to cut. This clearly does not fall into the definition of active participation as stated above. Accordingly, reasonable minds could not differ the Staffco did not actively participate by exercising control over the work activities of CCC.
 {¶ 27} "b. Defendants' Exercise of Control Over Safety in theWorkplace
 {¶ 28} "The retention of control over safety policies and procedures do not rise to the level of active participation. Bond,72 Ohio St.3d at 337. Similarly, active participation requires something more than conducting daily safety inspections. Kratzer, 1998 Ohio App. LEXIS 1655 at * 11. Plaintiff is attempting to impose a duty upon Defendant's by pointing to contractual language between RTA and Shook and RTA and Staffco. However, it has been held that `contract language pertaining to job safety is nothing more than standard boilerplate terminology common to virtually all construction contracts'. Cafferkeyv. Turner Construction Co., (1986), 21 Ohio St. 3d 110, 113. Shook argues, and the Court agrees, that having contractual control over safety policies and procedures does not amount to active participation. If it did, then any employee of a subcontractor injured on a job could sue the construction manager and contractor of the construction project for their injuries, effectively eliminating the no-duty rule that protects construction managers and contractors from such suits. In situations like this, courts have consistently focused on whether the construction manager or general contractor gave or denied permission for the critical act — in this case, the use of shoring. It is clear that CCC was responsible for the use of shoring to support the floor, and that neither Shook nor Staffco gave or denied permission to omit the use of shoring. Thus, reasonable minds could not differ as to Shook and Staffco's active participation by retaining control over a critical variable (the Safety Program) of the workplace.
 "III. CONCLUSION {¶ 29} "Based on the foregoing, this Court finds that reasonable minds could come to but one conclusion, and that conclusion is adverse to the Plaintiff. As such, no genuine issue of material fact remains for a jury in this case. THEREFORE, the Court hereby SUSTAINS Defendant Shook Building Group's Motion for Summary Judgment, and SUSTAINS Defendant Staffco Construction, Inc.'s Motion for Summary Judgment."
 {¶ 30} The summary judgment in favor of Concrete Coring also incorporates all the facts recited above but adds different ones as are applicable to this claim of intentional tort, as follows:
 "I. FACTS {¶ 31} "On April 18, 2000, Plaintiff Michael Reno was an employee of Defendant
 {¶ 32} Concrete Coring Company (`CCC'). CCC had been hired as a subcontractor to remove parts of three floors in order to install a stairwell at a construction site in downtown Dayton. Plaintiff was assigned to assist Tim Deel, who would be making the cuts. Mr. Deel had been working on the site for several days prior to April 18, and had succeeded in removing a portion of the third floor. Plaintiff's duties on the day in question was to assist Mr. Deel in the removal of a portion of the second floor. Plaintiff had worked with Mr. Deel on several previous occasions. According to Plaintiff, he did not like working with Mr. Deel because, in his opinion, Mr. Deel's work habits were unsafe. Plaintiff had made complaints to CCC management about Mr. Deel. Plaintiff states that at a previous worksite, Mr. Deel failed to shore a piece of concrete being removed from a vertical wall, and that piece later fell. However, Mr. Deel and CCC management deny that this incident occurred.
 {¶ 33} "When removing a portion of a floor, shoring is installed to support the floor during the cutting. Mr. Deel used shoring to support the floor when he cut the third floor. However, that shoring was insufficient to use on the second floor because it was not tall enough. Mr. Deel alerted the CCC management that the shoring was insufficient, and was instructed to obtain new shoring from their supplier.
 {¶ 34} "Mr. Deel inspected the area to be cut and decided to begin making preliminary cuts in the floor before shoring the floor. According to Mr. Deel, who had been working for CCC for 18 years, it was safe to make these preliminary cuts because he saw no signs that the floor would collapse. In his deposition, Plaintiff stated that he saw no danger in making the preliminary cuts without shoring. Mr. Deel and Plaintiff made some preliminary cuts, and went to lunch. After lunch, instead of getting the adequate shoring, Mr. Deel continued with making the preliminary cuts. Plaintiff states that he complained to Mr. Deel about continuing to cut without shoring and was told to go back to work. A few minutes later, a part of the floor collapsed, injuring Plaintiff, Mr. Deel, and a third person working at the site.
 {¶ 35} "Later inspections of the collapse site revealed a crack in the concrete that had been concealed by a top layer of concrete. Additionally, the condition of the floor was concealed by the plaster ceiling, and the concrete slab being cut was supported by rebar that was rusted and ran in only one direction, which was different from normal construction practices and different from the floor that Mr. Deel had previously cut. These factors, along with the floor not having been shored, contributed to the collapse. Plaintiffs Michael and Ginny Reno seek damages from CCC for negligence, intentional tort, punitive damages, and loss of consortium.
 "II. LAW AND ANALYSIS {¶ 36} "* * * *
 {¶ 37} "In Ohio, workplace injuries are generally compensated through the Ohio Worker's Compensation system. Accordingly, Plaintiffs are barred from recovery for any negligence of the Defendant. The Plaintiff in this case, however, also brings forth the present action on the basis of intentional tort. Therefore, the present motion falls outside of the Ohio Worker's Compensation system. As such, a very narrow issue remains for the Court. Whether reasonable minds could differ as to the CCC's liability under an employer intentional tort theory is the issue now before the Court.
 "Intentional Tort {¶ 38} "In order to establish intent for the purpose of proving employer intentional tort, the employee must demonstrate:
 {¶ 39} "1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 {¶ 40} Fyffe v. Jeno's, Inc. (1991), 59 Ohio St. 3d 1215 at paragraph 1 of the syllabus.
 {¶ 41} "In this case, there are genuine issues of material fact as to the first and third elements of the tort. For the first element, reasonable minds could differ as to whether CCC knew of the existence of a dangerous process, procedure, instrumentality, or condition within the workplace; specifically, not using shoring when cutting the floor. Similarly, reasonable minds could differ as to whether CCC required the Plaintiff to continue to perform the dangerous task.
 {¶ 42} "CCC accurately directs the Court, however, to the second prong of the Fyffe employer intentional tort standard. The issue then becomes whether CCC had knowledge that requiring Plaintiff to engage in the dangerous process was substantially certain to cause harm to the Plaintiff. This second element is crucial to distinguish between intentional torts and accidents intended to be covered solely by worker's compensation laws. Thompson v. Monarch Marking Systems, Inc. (Apr. 26, 1995), Montgomery App. No. 14695, unreported, at p. 3. In order to withstand CCC's summary judgment motion, Plaintiff must produce evidence that creates a genuine issue of material fact as to whether CCC was substantially certain that Plaintiff would be injured. See Cox v.Barsplice Prods., Inc., 2001 Ohio App. Lexis 2641, at p. 3.
 {¶ 43} "Substantial certainty of harm requires much greater proof than negligence or recklessness. Id., citing Van Fossen v. Babcock WilcoxCo. (1991), 36 Ohio St. 3d 100. The Supreme Court in Fyffe and VanFossen explained the proof required as a progression beginning with negligence, and culminating with the extreme proof required for substantial certainty. Id. Emphasis added. In this regard, the Supreme Court stated:
 {¶ 44} "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
 {¶ 45} Fyffe, 59 Ohio St. 3d at paragraph two of the syllabus, citingVan Fossen, 36 Ohio St. 3d at paragraph six of the syllabus.
 {¶ 46} "Stated another way, simply knowing that the employee that the employee [sic] is at risk is insufficient; instead, the employer must be virtually certain the employee will be injured. Spates v. Richard E.Jones Assoc., (July 12, 1995), Montgomery App No. 15057, unreported, at p. 2. The lack of substantial certainty is also evidenced by the fact that the person supposedly responsible for the intentional tort also exposed themselves to the alleged substantially certain injury or death.Wehri v. Countrymark, Inc. (1992), 82 Ohio App.3d 535, 539.
 {¶ 47} "Here, the Plaintiff has not set forth specific facts that would raise a genuine issue of material fact as to whether CCC wassubstantially certain that the Plaintiff would sustain an injury as a result of cutting the floor without shoring. Mr. Deel choose not to shore the floor when making preliminary cuts because he didn't feel it was necessary. Mr. Deel was exposed to the same risk of injury as the Plaintiff. It would be illogical to assume that Mr. Deel would expose himself, along with Plaintiff, to a substantially certain risk of injury. Mr. Deel may have been negligent, possibly even reckless, in not shoring the floor. However, Plaintiff has failed to present any evidence that CCC was substantially certain that Plaintiff would be injured by working at the allegedly dangerous job site, and thus has failed to satisfy the second element of the Fyffe test. Reasonable minds could not differ that CCC was not substantially certain that Plaintiff would be injured, and the intentional tort claim must fail. Accordingly, the Plaintiff's claims for punitive damages and loss of consortium must fail as well.
 "III. CONCLUSION {¶ 48} "Based on the foregoing, this Court finds that reasonable minds could come to but one conclusion, and that conclusion is adverse to the Plaintiff. As such, no genuine issue of material fact remains for a jury in this case. THEREFORE, the Court hereby SUSTAINS Defendant Concrete Coring Company's Motion for Summary Judgment."
 {¶ 49} We find after perusing the entire record that the decisions of the trial court are amply supported by the facts and the record. We have reviewed the two summary judgment decisions de novo as required by law (Citations omitted). We agree with the court's analysis and the decision in both summary judgments and we hereby adopt them as our own.
 {¶ 50} All assignments of error are overruled and the judgment is affirmed.
Wolff, J. concurs.