OPINION
{¶ 1} Richard A. Barnes, Marianne Barnes, Charles Barnes, and Natural Supply Corporation (collectively, hereinafter, "the Barnes") appeal from the Geauga County Court of Common Pleas' grant of summary judgment to Michael J. Joyce, Chester Township Zoning Inspector, and the Chester Township Board of Trustees, in an action for injunctive relief. We affirm. *Page 2 
 {¶ 2} April 4, 2007, Mr. Joyce and the Chester Township Board of Trustees filed a complaint for preliminary and permanent injunctions against the Barnes. The complaint alleged that Richard and Marianne Barnes owned contingent parcels zoned residential, located at 9451 and 9473 Mulberry Road, respectively, in Chester Township. It noted that the Barnes family had operated the "Barnes sawmill" at 9473 Mulberry Road for some sixty years, which use was grandfathered pursuant to the Township's relevant zoning laws. It alleged that Charles Barnes and Natural Supply Corporation, in concert with Richard and Marianne Barnes, was operating an Ohio EPA Level IV composting facility at 9451 Mulberry Road, bringing in waste materials from outside the Barnes properties for processing into mulch, which operation constituted an industrial use in violation of the Township's zoning laws.
 {¶ 3} May 2, 2007, the Barnes answered the complaint.
 {¶ 4} June 11, 2007, hearing was held before the trial court. Mr. Joyce testified on his own behalf, and that of the board of trustees, as did four neighbors of the Barnes: Glenn Battles, Ronald Cotman, James Novotny, and Paul Nye. The testimony of these witnesses was largely the same: that, while the sawmill activities on the Barnes' properties caused no disturbance, there had been an increase in noise and odor from the Barnes' properties, as well as an increase in heavy truck traffic, bringing in waste products for mulching and/or composting, since about 2002.
 {¶ 5} Charles Barnes appeared for the Barnes interest. He testified that he was thirty-two years old, and had worked at the Barnes sawmill for his grandfather, then his uncle, Richard, since he was twelve or fourteen. He testified that mulch, in the form of sawdust, had always been produced by the sawmill as a byproduct of its timber *Page 3 
operations. He testified that starting about 1997, the Barnes family began renting a tube grinder, evidently a more powerful machine than that previously used, to grind up wood, especially old logs stored on the properties. He testified that the Barnes purchased their own tube grinder in about 2002; and admitted that various persons, including landscaping operations in Geauga County, brought in logs and brush to ground into mulch. He testified that Natural Supply Corporation was created in order to separate liability for operation of the tube grinder from that of the sawmill.
 {¶ 6} July 27, 2007, the trial court issued its judgment entry and decision, granting the preliminary injunction. The trial court determined that the operation of the Barnes sawmill, and production of mulch as a byproduct of the sawmill's operations, were lawful, nonconforming uses of the subject properties. However, it held that the receipt of brush, leaves, tree trimmings, branches and other materials from landscapers, municipalities, or other sources outside the Barnes' properties, and production of mulch therefrom, were not lawful, nonconforming uses. It further held the operation of an Ohio EPA Class IV composting facility was not a lawful, nonconforming use.
 {¶ 7} August 22, 2007, Mr. Joyce and the board of trustees moved for summary judgment regarding their complaint for permanent injunction, relying, largely, on the evidence adduced at the hearing on the preliminary injunction. October 1, 2007, the Barnes filed their motion in opposition. It relied principally on an attached affidavit from Charles Barnes, asserting that, based on his personal experience at the Barnes sawmill, and conversations with his older relatives running it before him, the sawmill had always accepted materials from outside their sawmill operation for the production of *Page 4 
mulch. Mr. Barnes further asserted in his affidavit that composting had always formed part of the sawmill's operation.
 {¶ 8} October 15, 2007, the trial court filed its judgment entry and decision, granting the motion for summary judgment, and the permanent injunction. In relevant part, the trial court refused to accept Charles Barnes' affidavit testimony that the Barnes sawmill had always accepted materials from outside sources to produce mulch, and that composting had always formed part of its operations. The trial court noted that this affidavit testimony contradicted Mr. Barnes' testimony at the preliminary injunction hearing. It further remarked that Mr. Barnes was too young to know, personally, the operations of the sawmill prior to the enactment of the Township zoning resolution: thus, whatever he had learned of its alleged former operations from his elders was hearsay.
 {¶ 9} November 14, 2007, the Barnes noticed this appeal, assigning one error:
 {¶ 10} "Appellants state the Trial Court committed error by granting Plaintiff-Appellee Motion for Summary Judgment because there remains an issue of material fact to be determined at Trial. This is found in the Trial Court's Decision on p. 3 R. 21."
 {¶ 11} In support of their assignment of error, the Barnes make two arguments. First, they cite to Evid. R. 803(20), which allows in reputation evidence relating to the boundaries or customs affecting lands in controversy, for the proposition the trial court erred in excluding Charles Barnes' affidavit as hearsay. Second, they argue that Charles Barnes' testimony at the hearing on the preliminary injunction was sufficient to present an issue of material fact as to whether mulching operations at the Barnes sawmill should be grandfathered under the applicable zoning laws. *Page 5 
 {¶ 12} "`Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293, * * *. `In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ. R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, * * *.
 {¶ 13} "Accordingly, `(s)ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.'Brunstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing Dresher at 292. `Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing Dresher at 293.
 {¶ 14} "* * *
 {¶ 15} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and nonmoving party. In *Page 6 Dresher v. Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, * * *
 {¶ 16} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, * * *, is too broad and fails to account for the burden Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMitseff. (Emphasis added.) *Page 7 
 {¶ 17} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)"Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 36-37, 40-42. (Parallel citations omitted.)
 {¶ 18} While summary judgment may not be elevated into a "little trial," Civ. R. 56(E) requires that affidavits, to be effective in such proceedings, must "be made on personal knowledge, [and] set forth such facts as would be admissible in evidence, and * * * show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Further, "when a non-movant submits an affidavit contradicting prior testimony in an attempt to defeat a motion for summary judgment, there must be some explanation for the inconsistency or the evidence is not to be considered." Reno v. Concrete Coring,Inc., 2d Dist. No. 20650, 2005-Ohio-3062, at ¶ 23.
 {¶ 19} Application of these standards to the Barnes' arguments mandates we affirm the trial court.
 {¶ 20} As the trial court found, Charles Barnes, aged thirty-two at the time of the proceedings below, was simply too young to know, personally, what activities were carried on at the Barnes sawmill at its founding some sixty years ago, prior to the enactment of the relevant zoning laws. The Barnes argue that his affidavit that they always accepted outside materials for mulching, and always carried on composting, *Page 8 
should be admitted since he allegedly learned these things from his uncle and grandfather. They then cite to the hearsay exception set forth at Evid. R. 803(20), entitled "Reputation concerning boundaries or general history[,]" which provides that the following may be testified to without violating the hearsay rule: "Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located." That is, the Barnes assert Charles Barnes' affidavit testimony does not constitute hearsay, since the alleged ongoing mulching and composting operations of the Barnes sawmill were matters concerning the "reputation" of "customs affecting lands in the community."
 {¶ 21} We respectfully disagree. Evid. R. 803(20) excepts from the operation of the hearsay rule "reputation in a community * * * as to boundaries of or customs affecting lands in the community * * *." (Emphasis added.) That is, to be cloaked by Evid. R. 803(20), the reputation regarding the boundaries or customs affecting land must be something known generally, to the community, or such a substantial portion of persons as to constitute a community. We cannot find, under the circumstances, that those members of the Barnes family operating the sawmill constitutes a community-especially when the evidence attempted to be presented is controverted by four longtime neighbors to the properties concerned.
 {¶ 22} The first argument lacks merit.
 {¶ 23} The Barnes also argue that Charles Barnes' testimony at the preliminary injunction hearing was sufficient to raise a genuine issue of material fact in opposition to the summary judgment motion. They note he testified, at several points, that the *Page 9 
production of mulch had always occurred, in the form of sawdust resulting as a byproduct of the sawmill's normal operations.
 {¶ 24} We agree, but respectfully discountenance the argument's relevance. In its decision supporting its judgment entry granting the preliminary injunction, the trial court found that the production and sale of mulch as a byproduct of the sawmill's normal lumbering activities was a lawful, nonconforming use. By its preliminary and permanent injunctions, it merely enjoined the Barnes from producing mulch from leaves, branches, brush, tree trimmings and other materials brought from outside the property, or from operating a Class IV composting facility.
 {¶ 25} The second argument lacks merit, as does the assignment of error.
 {¶ 26} The judgment of the Geauga County Court of Common Pleas is affirmed.
 {¶ 27} It is the further order of this court that appellants are assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
 CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur. *Page 1