DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, William Hudson, appeals from the decision of the Summit County Court of Common Pleas granting summary judgment to appellee, DaimlerChrysler Motors Co., LLC ("DaimlerChrysler"). We affirm.
 I. {¶ 2} In November 2001, William Hudson was employed as an iron worker for Pro Construction. Pro Construction was a subcontractor of Standard Construction, which, in turn, was a general contractor for DaimlerChrysler. On November 19, 2001, Hudson was instructed to report to a DaimlerChrysler facility in Twinsburg to place decking and rebar, as part of a larger project to install a new press line. While he was working, Hudson stepped backward to assess his work and fell 20 feet down through a hole measuring approximately four feet by nine feet. As a result of the fall, Hudson sustained injuries for which he now seeks compensation.
 {¶ 3} On June 12, 2002, Hudson filed the present action against DaimlerChrysler and ten unknown John Does. In his complaint, Hudson alleged that DaimlerChrysler was negligent, reckless, and careless in creating a hazardous condition on its property and in failing to warn him of the hazard. DaimlerChrysler answered, and both parties proceeded to conduct discovery. On July 29, 2003, DaimlerChrysler moved for summary judgment, asserting a lack of liability because, inter alia, the hole was an open and obvious hazard. The trial court subsequently granted summary judgment to DaimlerChrysler, finding that there was no genuine issue of material fact that the hole through which Hudson fell was an open and obvious hazard. This appeal followed.
 II. Assignment of Error
"The trial court erred when it granted summary judgment in favor of the defendant Daimler Chrysler Motors Co., LLC, et al."
 {¶ 4} Hudson asserts, in his sole assignment of error, that the trial court erred in granting summary judgment to DaimlerChrysler.
 {¶ 5} The central question before this court on appeal is whether there exists a genuine issue of material fact as to the open and obvious nature of the hole through which Hudson fell. We conclude that there was no genuine issue of material fact on that point and that, consequently, summary judgment was properly granted to DaimlerChrysler.
"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor." Armstrong v. Best Buy Co. Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 15, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
 {¶ 6} Appellate review of a lower court's entry of summary judgment is de novo. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis of the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. See Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R.56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 7} To establish actionable negligence, a plaintiff must show the existence of a duty on the part of the defendant toward the plaintiff; a breach of that duty; and an injury resulting therefrom. Mussivand v.David (1989), 45 Ohio St.3d 314, 318. Where there is no duty or obligation of care or caution, there can be no actionable negligence.Mussivand, 45 Ohio St.3d at 318, citing United States Fire Ins. Co. v.Paramount Fur Serv., Inc. (1959), 168 Ohio St. 431, paragraph three of the syllabus. "The existence of a duty in a negligence action is a question of law for the court to determine." Mussivand,45 Ohio St.3d at 318.
 {¶ 8} Generally, the employee of an independent contractor hired by an owner of premises to do work thereon is an invitee. Hozian v. CrucibleSteel Casting Co. (1937), 132 Ohio St. 453, paragraph three of the syllabus. The owner owes the invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to inform of hazardous conditions on the premises that are not known or obvious to the invitee.Paschal v. Rite Aid Pharmacy (1985), 18 Ohio St.3d 203, 203-04; Bosjnakv. Superior Sheet Steel Co. (1945), 145 Ohio St. 538, paragraph one of the syllabus. It does not appear to be disputed that Hudson's status was that of invitee.
 {¶ 9} The Ohio Supreme Court has recently reiterated that a property owner has no duty to inform an invitee about open and obvious dangers on the property. Armstrong v. Best Buy Co. Inc., 99 Ohio St.3d 79,2003-Ohio-2573, at syllabus. The court emphasized the fact that this doctrine relates to the threshold issue of duty in a negligence action. Id. at ¶ 13. There is no duty to warn of such hazards because the open and obvious nature of the hazard itself is said to serve as a warning. Id. Where the doctrine is applicable, it "acts as a complete bar to any
negligence claims." (Emphasis added.) Id. at ¶ 5. Accordingly, when a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises. Armstrong, 99 Ohio St.3d at syllabus.
 {¶ 10} The evidence in the case at bar reveals the following. Hudson arrived at the DaimlerChrysler facility at approximately 6:45 a.m. on November 19, 2001. He was met by Jimmy Wilkins, foreman and on-site supervisor for Pro Construction, and learned that he and Wilkins would be placing decking and tying rebar in a portion of the plant. Hudson and Wilkins were then met by Kenneth Kolcun, the superintendent from Standard Construction, who walked them to the job site. The site where Hudson and Wilkins were to work was within an 80 by 160-foot area, designated as a construction zone and cordoned off by a guardrail.
 {¶ 11} Kolcun stated that he had learned of the existence of the open hole that morning and was advised that it was going to be covered with plywood by DaimlerChrysler employees. The hole was not covered immediately because DaimlerChrysler did not have the plywood on site and it had to be ordered.
 {¶ 12} Kolcun specifically recalled warning Wilkins about the existence of the hole, but could not recall whether Hudson was present at that time. For his part, Hudson stated in deposition that he was not warned of the hole, but surveyed the area and "looked around to make sure everything was all right[,]" specifically looking for any "unsafe condition" such as the presence of "holes." He stated he did not see any.
 {¶ 13} Hudson's assigned job required that he and Wilkins pick up sections of three-foot wide decking material from a nearby pile and carry them over to the place where they were to be installed. Hudson stated that he and Wilkins walked back and forth in this manner through the area most of the morning.[1] According to Hudson, the hole into which he fell was four to six feet — or two to three steps — away from the area where he was working. Hudson stated that, at approximately 1:30 p.m., after placing some rebar, he took "a couple steps back to look to make sure they're straight and [he] fell."
 {¶ 14} On appeal, Hudson claims that he did not see, nor was he ever warned about, the hole in question. Of course, the fact that Hudson may not have seen the hole does not directly conflict with testimony by other witnesses and the finding of the trial judge that the hole was open and obvious. Both may be true. The fact that Hudson may not have seen the hole does not alone create a duty on behalf of DaimlerChrysler where the hole is otherwise determined to have been an open and obvious hazard.
 {¶ 15} DaimlerChrysler's position was supported by the deposition testimony of several witnesses. These witnesses attested to the open and obvious nature of the hazard, as well as to the fact that Kolcun, the supervisor for the general contractor, warned Wilkins, the foreman for the subcontractor, of its presence.
 {¶ 16} First, Kolcun stated that he had no difficulty in seeing the hole himself on the day of the accident, and that "[Hudson] should have seen the hole." Kolcun also stated that it was "pretty obvious that there is a hole there." As indicated earlier, Kolcun also recalled warning Wilkins about the hole, but could not recall whether Hudson was present at the time. Kolcun stated he understood from Wilkins that Wilkins and Hudson "talked about [the hole] frequently during the day so that nobody ever forgot that that hole was there."
 {¶ 17} Second, John Haynes, safety manager and project manager for Standard Contracting and Engineering, stated that Hudson must have been aware of the hole, because "you can blatantly see it." He reasoned that, in the course of doing their jobs that day, "[Wilkins and Hudson] had to see the hole." Haynes also reported: "[Wilkins] [s]aid that they had conversations during the day, that they both talked about the hole, knew it was there. They talked about it after lunch that they were getting close to it, to be careful."
 {¶ 18} Third, James Holcomb, general labor foreman for Standard Contracting, also observed that it was a fairly big hole and remarked, "I don't see how you can't see a four foot by eight foot hole."
 {¶ 19} Fourth, Delbert E. Jordan, owner of Pro Construction, the company that employed Hudson, believed that Hudson must have known about the hole because he was working in the area and had to go by it to get to the job site as well as to go to lunch.
 {¶ 20} In an effort to counter this testimony, Hudson claims that Wilkins did not know about the existence of the hole. In support of that assertion, Hudson claims that after he fell, Wilkins said to him: "Where did that hole come from? It should have been covered." While this remark, at first blush, may imply that Wilkins was unaware of the hole, we conclude that the statement lacks any meaningful relevance. In particular, Wilkins' words do not deny that he had been warned of the existence of the hole. Wilkins may merely have been expressing the surprise that such an accident may evoke. In addition, any merit in Hudson's argument is weakened by the fact that Wilkins was not a witness in these proceedings. Wilkins did not personally explain the statement and was not subject to any cross-examination regarding the statement because he did not present evidence in deposition or affidavit.[2]
 {¶ 21} Next, Hudson attempts to counter the evidence that the hole was open and obvious with his own statement that the area was "semi dark" because it was shadowed by a large machine, and he was, therefore, not able to perceive the hole. Initially, we note that Hudson admitted that he fell into the hole as he was moving backwards. He and Wilkins had traveled back and forth past the hole most of the morning without incident. It was only as Hudson stepped backward that he fell. Consequently, any argument that the area may have been dark is of little value because of the manner in which the accident occurred.
 {¶ 22} Furthermore, there was no evidence that Hudson himself had lodged any complaint of insufficient lighting to do his job, and he obviously worked in the area for several hours prior to his fall. The fact that Hudson failed to register a contemporaneous complaint as to the lighting in the area while he was performing his job is significant because several other witnesses testified that the area was well lit. First, Kolcun stated that the area was "very well lit," the entire facility is "fairly bright," and there was no large press on either side of Hudson's work area to block light that day. Second, John Haynes, safety manager for Standard Contracting, also stated that there is bright lighting in the facility and there were no large presses on either side blocking Hudson's ability to see in the job area. Third, James Holcomb, general labor foreman for Standard Contracting, stated that it was not dark in the work area and that the lighting conditions were satisfactory to work. He denied that there were any presses along the side of the work area that might block light. In addition, none of the pictures attached as exhibits to depositions demonstrated large machinery next to the work area. Consequently, Hudson's self-serving claim that the area was "semi dark" is not sufficient to create a genuine issue of material fact as to whether the hole was open and obvious.
 {¶ 23} We also note that, notwithstanding the questionable evidence that darkness may have obscured the hazard from Hudson's view, "`[d]arkness' is always a warning of danger, and for one's own protection it may not be disregarded." Jeswald v. Hutt (1968), 15 Ohio St.2d 224, paragraph three of the syllabus. Therefore, even assuming the area was dark, that darkness would have constituted its own warning to Hudson to beware of possible danger.
 {¶ 24} Furthermore, even assuming the hole was not open and obvious, DaimlerChrysler would have satisfied its duty to warn by ensuring that Pro Construction knew of the hole. Notice to an independent contractor of hazards within the employment area has been said to be notice to his employees. Pifher v. Ford Motor Co. (Aug. 10, 1994), 9th Dist. No. 93CA005581, citing Schwarz v. Gen. Elec. Realty Corp. (1955),163 Ohio St. 354, 359. As this Court reasoned in Pifher, if the hole had been a hidden danger, DaimlerChrysler would not "have had a duty to alert each individual worker at the plant about it. Rather, [its] duty would have been satisfied by ensuring that the independent contractor knew of the danger so that it could alert its employees." Pifher, supra.
 {¶ 25} In the present case, there was evidence that David Mazey, lead project supervisor for DaimlerChrysler, discovered the hole that morning, told Ken Kolcun, and also advised a DaimlerChyrsler supervisor, Jim Lacko, to cover it with plywood. Kolcun then testified that he, in turn, warned Jimmy Wilkins, the Pro Construction foreman, of the existence of the hole and to stay away from it. Consequently, even assuming the hole constituted a hidden danger, DaimlerChrysler satisfied its duty by informing the supervising foreman for the independent contractor of the existence of the hole.[3]
 {¶ 26} On appeal, Hudson also argues that DaimlerChrysler actively participated in the critical activity that led to his accident. Essentially, he argues that DaimlerChrysler was responsible for uncovering the hole and that its employees were contractually obligated to cover it. However, "retention of authority to monitor and coordinate activities of subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation," but instead establish only a "general supervisory role in the project and/or its general concern for safety at the site." Bond v. Howard Corp.
(1995), 72 Ohio St.3d 332, 337.
 {¶ 27} Hudson also contends that the position of DaimlerChrysler violates public policy because it obviates premises liability law by making preventive measures unnecessary. In recently affirming the continued vitality of the open-and-obvious doctrine, however, the Supreme Court has implicitly declared that the open-and-obvious doctrine does not violate Ohio's public policy. See, generally, Armstrong, 99 Ohio St.3d 79,2003-Ohio-2573.
 {¶ 28} Finally, in his reply brief to this Court, Hudson argues that a duty is established by Occupational Safety and Health Administration ("OSHA") regulations in DaimlerChrysler, and that such duty cannot be vitiated by the open and obvious doctrine. This argument was not raised in the trial court, however, and may not be considered for the first time on appeal. See Sekora v. Gen. Motors Corp. (1989), 61 Ohio App.3d 105,112. But, see, Hernandez v. Martin Chevrolet, Inc. (1995),72 Ohio St.3d 302, 303-04 (holding that violations of an OSHA regulation do not constitute negligence per se because OSHA was not intended to affect the duties of employers owed for the safety and protection of others). The argument is overruled.
 {¶ 29} In conclusion, it appears that Hudson willingly subjected himself to working in close proximity to the existing hazard and made no contemporaneous complaint as to insufficient lighting in his work area. Evidence was presented that DaimlerChrysler provided notice of the hole to the on-site foreman and that the on-site foreman communicated that information to Hudson. Before he fell, Hudson traversed the area several times without incident. He fell only after working several hours in the same location and only when he was moving backwards. The material facts not being in dispute, we conclude that the trial court did not err in granting summary judgment to DaimlerChrysler. Accordingly, Hudson's sole assignment of error is overruled.
 III. {¶ 30} Having overruled Hudson's assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Baird, P.J., Slaby, J., concur.
[1] After a morning break and before lunch, Hudson also performed "fire watch" in the basement while DaimlerChrysler employees welded the decking. While he was performing such duty, essentially under the location where they were welding, Hudson claims he did not see the hole above.
[2] Hudson also attempts to rely on Jordan's testimony to support his claim that Wilkins was not warned of the existence of the hole. The argument, however, fails. A careful review of the deposition testimony reveals that Jordan did not state that Wilkins actually denied such a warning had been made or deny that he passed it along to Hudson. In fact, Jordan pointedly refused to affirm that Kolcun and Wilkins did not have a meeting about the existence of the hole that morning.
[3] Hudson attempts, unsuccessfully, to counter this argument by relying on the testimony of James Lacko, DaimlerChrysler project supervisor. Hudson notes that Lacko stated he did not warn Pro Construction of the existence of the hole. However, the fact that Lacko did not warn the Pro Construction workers does not mean that no one
warned them.