[Cite as *Nagy v. Fred Albrecht Grocery*, 2023-Ohio-4049.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ERIC P. NAGY, et al.

    Appellants

v.

THE FRED W. ALBRECHT GROCERY
CO. dba ACME SUPER MARKETS

    Appellee

C.A. No.    30376

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2020-05-1414

DECISION AND JOURNAL ENTRY

Dated: November 8, 2023

SUTTON, Presiding Judge.

**{¶1}** Plaintiffs-Appellants, Eric and Jessica Nagy, appeal from the judgment of the Summit County Court of Common Pleas awarding summary judgment to Defendant-Appellee, The Fred W. Albrecht Grocery Co., dba Acme Super Markets ("ACME"). This Court affirms.

I.

**Relevant Background**

**{¶2}** Eric Nagy was employed as a carpenter at Krumroy-Cozad Construction Company. Krumroy-Cozad Construction Company was hired by ACME to renovate and expand a grocery store in Norton, Ohio. On May 4, 2018, Mr. Nagy walked through a set of double doors to go outside to the location he had worked the previous day. Upon doing so, Mr. Nagy fell into an excavated trench and broke his ankle. Mr. Nagy acknowledged he saw the excavation partially into the double doors prior to leaving for the day on May 3, 2018.

{¶3} The Nagys filed a complaint against ACME, and one John Doe, alleging negligence and loss of consortium. Specifically, the Nagys alleged a John Doe Defendant, an employee of ACME, turned off the door alarm and removed a barricade consisting of cones and tape in front of the double doors. ACME filed a motion for summary judgment, the Nagys filed a memorandum in opposition, and ACME filed a reply. The Nagys also filed a motion to amend the complaint to add a statutory claim, pursuant to R.C. 4101.02, alleging Mr. Nagy was a frequenter of the store. The trial court denied the Nagys' motion to amend. In awarding summary judgment to ACME, the trial court stated:

* * *

In accordance with [*Sidle v. Humphrey*, 13 Ohio St.2d 45], this [c]ourt finds that since [Mr.] Nagy was aware of the trench and therefore, the dangerous condition, [ACME], as the owner of the premises, did not have a duty to warn him of the danger. A construction site is inherently dangerous and as a construction worker on the site in question, Mr. Nagy was acutely aware of this fact and is expected to have discover[ed] and protect[ed] himself against just such a condition.

Since this [c]ourt has made this finding, it is unnecessary to determine whether [ACME] properly warned [Mr.] Nagy, an employee of [Krumroy-Cozad Construction], of the condition (i.e. whether the door alarm should have been engaged and/or who disengaged the alarm or whether an [ACME] employee moved the cones from in front of the door). Likewise, this [c]ourt need not engage in an analysis whether other attendant circumstances led to Mr. Nagy's fall (i.e. the fact that he was carrying a box of caulk or whether his attention was elsewhere due to the door alarm).

* * *

{¶4} The Nagys now appeal raising three assignments of error for our review. We group and take certain assignments of error out of order to better facilitate our review and discussion.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN GRANTING SUMMARY [JUDGMENT] IN FAVOR OF [ACME] WITHOUT TAKING INTO CONSIDERATION THE ATTENDANT CIRCUMSTANCES WHEN APPLYING THE OPEN AND OBVIOUS AFFIRMATIVE DEFENSE.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN ITS APPLICATION OF THE OPEN AND OBVIOUS AFFIRMATIVE DEFENSE BECAUSE THE OWNER/OCCUPIER OF THE PREMISES ACTIVELY ENGAGED IN CONDUCT CAUSING THE DEFECT OR HAZARD TO BE CONCEALED AND LESS OPEN AND OBVIOUS IN VIOLATION OF ITS COMMON LAW AND STATUTORY DUTY.**

{¶5} In their first and third assignments of error, the Nagys argue the trial court erred in granting summary judgment in favor of ACME. For the following reasons, we disagree.

{¶6} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co*., 35 Ohio St.3d 215, 218 (1988).

**{¶7}** The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm as follows:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

**{¶8}** To establish actionable negligence, a plaintiff must show the existence of a duty on the part of the defendant toward the plaintiff; a breach of that duty; and an injury resulting therefrom. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "Where there is no duty or obligation of care or caution, there can be no actionable negligence." *Hudson v. DaimlerChrysler Motors*, 9th Dist. Summit No. 21804, 2004-Ohio-3416, ¶ 7, citing *Mussivand* at 318, citing *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.*, 168 Ohio St. 431 (1959), paragraph three of the syllabus. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand* at 318.

**{¶9}** Indeed, a "construction site is inherently a dangerous setting." *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 336 (1995). "Supervision of a construction job, i.e., coordinating work and directing contractors to perform tasks in accordance with contract specifications, has never constituted 'active participation' in the work of an independent contractor. The very nature of the

construction business requires a general contractor or the owner of a construction site to 'supervise' a construction job." *Bond* at 339 (Wright, J., concurring). "An owner of a construction site who merely directs an independent contractor to perform a task required by contract specifications but does not retain control over the means or manner in which that task is performed does not owe a duty of care to an employee of a subcontractor who is subsequently injured as a result of the other contractor's performance of the task in an unsafe manner." *Michaels v. Ford Motor Co.,* 72 Ohio St.3d 475, 478 (1995).

{¶10} However, "[a] property owner may be held liable for injuries to or the death of an employee of an independent contractor if the property owner 'actively participated' [i.e.,] directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project.'" *Clark v. Ohio Dept. of Transp.* 163 Ohio St.3d 1443, 2021-Ohio-1925, ¶ 9, quoting *Sopkovich v. Ohio Edison Co.,* 81 Ohio St.3d 628, 641 (1998), quoting *Bond* at 337, quoting *Cafferkey v. Turner Constr. Co.,* 21 Ohio St.3d 110 (1986), syllabus. "Active participation giving rise to a duty of care may be found to exist" where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner "retains or exercises control over a critical variable in the workplace." *Sopkovich* at 643.

{¶11} Additionally, pursuant to common law, "[a]n occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey,* 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises

will discover those dangers and take appropriate measures to protect themselves.'" *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). "When applicable * * * the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. Further, as stated in 2 Harper & James, Law of Torts (1956), 1491:

> The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been.

**{¶12}** Here, Daniel Cozad, in his deposition, testified he is employed with Krumroy-Cozad Construction as a project manager. Mr. Cozad supervised construction at the Norton ACME remodeling project. Mr. Cozad explained, "[i]t was a major renovation [], expanding the store footprint, and so every department except frozen food was relocated as a result of that renovation project." Mr. Cozad indicated the double doors Mr. Nagy walked through, just before his accident, are within the construction zone controlled by Krumroy-Cozad Construction. Further, during the OSHA investigation, Mr. Cozad reported either a Krumroy-Cozad employee or a subcontractor of Krumroy-Cozad propped the double doors open to run an extension cord outside on the date of Mr. Nagy's accident. Mr. Cozad agreed it would not "make any sense for an [ACME] employee to enter this construction zone and run an extension cord on that door[.]" Mr. Cozad also acknowledged ACME activated the alarm on the double doors every evening, *for security purposes*, to keep people from coming inside the grocery store after closing, and deactivated the alarm in the morning, at the request of Krumroy-Cozad Construction employees, to allow the contractors and employees access through the doors without the security alarm sounding.

{¶13}    Mr. Nagy, in his deposition, testified on the day before his accident he worked 8-hours performing siding work on the outside of the Norton ACME store.  Mr. Nagy saw a person operating a "little mini excavator," taking out the concrete to the left of the double doors, facing from outside.  Prior to leaving work for the day at 2:30 pm on May 3, 2018, Mr. Nagy saw the excavation was "probably right up to the door, maybe 12, 14 inches into the doorway."  Additionally, during the September 16, 2020 Ohio Industrial Commission hearing, Mr. Nagy testified under oath that he saw the excavation being done on May 3, 2018, prior to his accident.  In addressing this testimony during Mr. Nagy's deposition, the following questioning ensued:

* * *

Q.  Let me start again.  The question at the bottom of page 23, "Well, I think you testified earlier that the excavated area was not there the day before; correct?"  And your answer was, "Not all the way across the door like the picture shows."  Did I read that correctly?

A.  You did.

Q.  Okay.  So you're telling the investigator that what you observed on May 3rd was there was excavation, but not all the way across the doors; correct?

A.  Correct.

Q.  Okay. And there was excavation at the doors, just not all the way across; correct?

A.  Correct.

Q.  Okay.  And as a matter of fact, you saw that on May 3rd; correct?

A.  Correct.

Q.  Okay.  So when you walked out those doors on May 4th, you knew that there was some excavation on the other side of those doors; correct?

A.  I would say you're correct.

* * *

Notably, although Mr. Nagy claimed an unknown ACME employee was negligent in moving a set of cones and tape from in front of the double doors on the date of his accident, there was absolutely no testimony or evidence that an ACME employee moved these items from in front of the double doors. Further, there was no evidence ACME actively participated in Mr. Nagy's work by deactivating the door alarm on the morning of May 4, 2018, because the alarm was intended for store security and was never used as a means to warn employees or subcontractors of Krumroy-Cozad Construction regarding any potential safety issues.

{¶14} Thus, based upon the foregoing, the trial court did not err in its determination that ACME had no duty to warn Mr. Nagy about the excavation as a matter of law. Mr. Nagy, an employee at an inherently dangerous construction site, was admittedly already aware of the excavation taking place in that general vicinity, and partially across the double doors, on the day before his accident. As such, the excavation was open and obvious to Mr. Nagy.

{¶15} Mr. Nagy also argues the trial court erred in failing to consider "attendant circumstances" in its application of the open and obvious doctrine. Mr. Nagy claims he was carrying a box of caulk in front of him, which blocked the view of his feet, the exterior double doors were solid metal and there was no warning regarding the excavation beyond the doors, and the door alarm was deactivated with the door propped open. "[C]onsideration of attendant circumstances is merely a generalized version of the reasonableness test subsumed by the open and obvious doctrine." *Marock v. Barberton Liedertafel*, 9th Dist. Summit No. 23111, 2006-Ohio-5423, ¶ 14. "Therefore, the issue before us is whether, considering the totality of the circumstances, a genuine issue of material fact exists regarding whether a reasonable person would have discovered [the excavation,] i.e. whether that hazard was open and obvious." *Id.*

**{¶16}** Here, as indicated above, Mr. Nagy had prior knowledge of the excavation the day before his accident. Mr. Nagy admitted to knowing about the excavation when he walked through the double doors on May 4, 2018. As such, in considering the totality of the circumstances, the fact Mr. Nagy was carrying a box of caulk, the double doors were solid metal, or the alarm was deactivated and the double doors were propped open does not create a genuine issue of material fact regarding whether the excavation was open and obvious because Mr. Nagy *knew* about the excavation, which had already been dug 12, 14 inches into the doorway, prior to the accident. Further, the record reveals Mr. Nagy chose to carry the box of caulk and use the double doors on May 4, 2023, instead of choosing a different manner of egress from the building. *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158 (7th Dist.1996). ("[A]n attendant circumstance is the circumstance which contributes to the fall and is a circumstance *beyond the control of the injured party*.") (Emphasis added.) Therefore, because Mr. Nagy had knowledge of the excavation and chose to use the double doors in spite of that knowledge, the trial court did not err in its judgment.

**{¶17}** Accordingly, the Nagys' first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY DENYING [THE NAGYS'] MOTION FOR LEAVE TO AMEND THEIR COMPLAINT PURSUANT TO OHIO CIV.R. 15 TO INCLUDE A CLAIM FOR RELIEF UNDER THE FREQUENTER STATUTE OHIO R.C. 4101.12 BASED ON [ACME'S] CONTROL OF A CRITICAL VARIABLE THAT HAD A CAUSATIVE EFFECT ON THE INJURY IN THIS CASE.**

**{¶18}** In their second assignment of error, the Nagys argue the trial court erred in denying them leave to amend their complaint to include a claim for relief under R.C. 4101.12, the frequenter statute.

**{¶19}** Civ.R. 15(A) provides:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

"Because the trial court maintains the discretion whether to deny leave to amend, an appellate court will not reverse a trial court's decision denying leave to amend a pleading absent an abuse of discretion." *Brown v. FirstEnergy Corp*., 9th Dist. Summit No. 22123, 2005-Ohio-712, ¶ 5, citing *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co*. 60 Ohio St.3d 120, 122 (1991). Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore* 5 Ohio St.3d 217, 219 (1983). When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993).

{¶20} Moreover, "a plaintiff must move to amend under Civ.R. 15(A) in a timely manner." *Cunningham v. Cunningham*, 9th Dist. Summit No. 14142, 1989 WL 154763, *10 (Dec. 20, 1989). However, "[a]n attempt to amend a complaint following the filing of a motion for summary judgment raises the [specter] of prejudice." *Johnson v. Norman Malone & Assoc., Inc*., 9th Dist. Summit No. 14142, 1989 WL 154763, *5 (Dec. 20, 1989). Therefore, "'plaintiffs should not be permitted to sit by for this period and bolster up their pleadings in answer to a motion for summary judgment.'" *Id*., quoting *Eisenmann v. Gould–Natl. Batteries, Inc*., 169 F.Supp. 862, 864 (E.D.Pa.1958).

{¶21} Here, the Nagys' filed a motion to amend his complaint after ACME filed its motion for summary judgment. In denying the motion to amend, the trial court stated:

* * *

Mr. Nagy also petitioned this [c]ourt to amend his [c]omplaint, following the filing of summary judgment motions, to include a statutory claim pursuant to R.C. 4121.12.

\* \* \*

Under the statute, [Mr.] Nagy claims that he was a "frequenter."  \* \* \* The Ohio Supreme Court has clarified that an employer's duty under the frequenter statutes is simply a codification of the aforementioned and analyzed common-law duty owed by an owner or occupier of premises to invitees.

\* \* \*

Accordingly, the frequenter statute, even if permitted in an amended pleading, would not attach liability to Mr. Nagy as he was an employee who was aware of the abnormally dangerous condition on the [premises].

\* \* \*

{¶22}    Based upon this record, and Mr. Nagy's admission that he had prior knowledge of the excavation, we cannot say the trial court abused its discretion in denying the Nagys' motion to amend the complaint.

{¶23}    Accordingly, the Nagys' second assignment of error is overruled.

III.

{¶24}    The Nagys' three assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

STEVENSON, J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶25} In its motion for summary judgment, Acme argued two grounds for concluding that it did not owe a duty to Mr. Nagy. Because the trial court incorrectly merged these arguments, I would reverse the trial court's decision and remand this matter for the trial court to apply the correct law in the first instance.

{¶26} To establish a claim of negligence, a plaintiff must demonstrate "the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984), citing *Di Gildo v. Caponi*, 18 Ohio St. 2d 125 (1969) and *Feldman v. Howard*, 10 Ohio St. 2d 189 (1967). With respect to invitees, a business owner has a duty of ordinary care to maintain the premises in a reasonably safe condition and a duty to warn invitees of latent or hidden dangers. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-

2573, ¶ ,5 citing *Paschal v. Rite Aid Pharmacy*, *Inc.*, 18 Ohio St.3d 203 (1985) and *Jackson v. Kings Island*, 58 Ohio St.2d 357 (1979). Two exceptions to the duty owed to invitees were raised in this case. First, as a general rule, no duty is owed to the employees of an independent contractor engaged to perform inherently dangerous work. *Sopokovich v. Ohio Edison Co.*, 81 Ohio St.3d 628, 636-637 (1998), quoting *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103 (1953), paragraph one of the syllabus. *See also Schwarz v. The Gen. Elec. Realty Corp.*, 163 Ohio St. 354 (1955), paragraphs one, two, and three of the syllabus.

{¶27} Second, and alternatively, a landowner owes no duty to warn those who lawfully enter the premises about open and obvious dangers. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus. "When courts consider whether a danger is open and obvious, the ultimate question is an objective one: whether a reasonable person would have found the condition of the property to be open and obvious." *See Wyatt v. Roses Run Country Club*, 9th Dist. Summit No. 28894, 2018-Ohio-4093, ¶ 17, citing *Ahmad v. AK Steel Corp.*, 119 Ohio St.3d 1210, 2008-Ohio-4082, ¶ 25. Consequently, courts must consider the totality of the surrounding circumstances in determining whether a hazard is open and obvious. *Id.* Further, "[t]he fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong* at ¶ 13.

{¶28} The substantive law underlying the claims provides the framework for reviewing motions for summary judgment, both with respect to whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Burkes v. Stidham*, 107 Ohio App.3d 363, 371 (8th Dist.1995). In this case, the trial court appears to have considered Acme's arguments that the

construction worksite was inherently dangerous and that the hazard at issue was open and obvious to be a single legal question. Accordingly, I would reverse the trial court's decision to grant summary judgment to Acme and remand the matter so that the trial court can apply the correct standards to the motion for summary judgment in the first instance.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellants.

EVAN PALIK, Attorney at Law, for Appellee.